The State of Ohio, Appellant, *v.* Darrington, Appellee.

(No. 77-957—Decided June 7, 1978.)

*Mr. John T. Corrigan,* prosecuting attorney, and *Mr. Russell W. Harris,* for appellant.

*Messrs. Adrine & Adrine* and *Mr. Ronald B. Adrine,* for appellee.

*Per Curiam.* On or about May 4, 1976, at approximately 9:40 p. m., several Cleveland police officers entered a Cleveland gasoline service station to execute a search warrant. The items to be searched for and seized were purportedly stolen C. B. radio units and any other contraband on the premises. Present upon the officers' arrival was Charles L. Darrington, appellee herein.

Officer Robert T. Kingzett testified that as the officers exited their own autos they observed appellee and a second male watching them. Appellee and his companion hurriedly entered a Cadillac, whereupon appellee caused it to back up and strike another Cadillac parked at the gas pumps. A conversation ensued with an individual in the struck auto, who then drove away.

Kingzett testified that he wanted to identify appellee:

"We approached the car, identified ourselves as police officers, and asked what had happened, and the driver of the automobile says, 'I backed up, struck the guy behind me.' He says, 'Everything's all right, we don't need a report.'

"I says, 'Well, do you have a driver's license so you can identify yourself?' At that time, he started looking

through papers that he had taken out of his pocket, couldn't find a driver's license.''

When appellee, fumbling nervously, was unable to produce the license, Kingzett asked him to step from the auto. As Kingzett watched appellee alight from the auto, he noticed a bulge in appellee's coat pocket. Kingzett touched the bulge, felt a gun and removed it. He arrested appellee for carrying a concealed weapon.

Kingzett testified that appellee had been ordered from the auto " * * * for our own personal safety, it's better to talk to people outside of a car because it's dark and you can't see what they're fumbling for. It's better to have the person get out of the car and reach in his pocket, get his papers that way.''

Appellee's motion to suppress evidence gleaned from the search of his person was granted by the Court of Common Pleas of Cuyahoga County and that judgment was affirmed by the Court of Appeals.

The cause is now before this court upon the allowance of the state's motion for leave to appeal.

Appellant submits that on such facts as obtain in the instant controversy, a police officer has sufficient reason to believe that his safety or that of others may be in jeopardy and that a pat-down is authorized under *Terry* v. *Ohio* (1968), 392 U. S. 1.

In *Terry*, the Supreme Court concluded that a police officer is justified in conducting a limited search for weapons once he has reasonably concluded that the person whom he has legitimately stopped might be armed and presently dangerous. The *Terry* standard tests whether the facts available to the officer at the moment of the search would warrant a man of reasonable caution to believe that the action taken was appropriate. *Terry, supra,* at pages 21-22.

In *Pennsylvania* v. *Mimms* (1977), 434 U. S. 106, 54 L. Ed. 2d 331, the *Terry* principle was applied to facts largely paralleling those of the instant cause. Therein, police officers had observed defendant Mimms driving an auto with an expired license plate and they

stopped him to issue a traffic summons. One of them approached and asked Mimms to exit his car and produce his operator's license. When Mimms alighted, an officer noticed a bulge under his jacket. Fearing the bulge might be a weapon, the officer frisked Mimms and discovered a revolver. Mimms was arrested for carrying a concealed deadly weapon, his motion to suppress the revolver was denied and after a trial at which the revolver was introduced in evidence he was convicted.

The commonwealth in *Mimms* conceded that the officer had no reason to suspect foul play from Mimms at the time of his stop; it was apparently the officer's practice to order all such drivers from their vehicles as a matter of course. The commonwealth defended this practice as a precautionary measure protective of officers.

The Supreme Court thought it "too plain for argument" that this proffered justification—the safety of the officer—is "both legitimate and weighty." The insistence of an officer that a driver alight from his car is at worst a mere inconvenience, which cannot prevail when balanced against legitimate concern for police safety. *Mimms, supra,* at pages 336-37.

The Supreme Court added that once Mimms had been ordered from his car and the bulge in his jacket observed, there was little question that the investigative search by the officer was justified. The bulge permitted the policeman to conclude that the driver was armed and posed a serious and present danger to the officer's safety. In such circumstances, any reasonably cautious man would probably conduct a frisk. *Mimms, supra,* at pages 337-38.

*Mimms* did not hold that whenever an officer has occasion to speak with the driver of a vehicle, the officer may order him from his car. *Mimms* holds only that once a vehicle has been lawfully detained for a traffic violation, the driver may be ordered from his car without violating the Fourth Amendment proscription of unreasonable searches aand seizures. *Mimms, supra,* at page 337, footnote 6.

In the cause *sub judice,* appellee had not committed a

traffic violation upon the *public* roadways. Thus, were the actions of the police officer unreasonable under the United States or Ohio Constitutions? We conclude they were not.

Appellee calls our attention to the declaration in the instant cause of the Court of Appeals, citing *Terry,* that it is now well-established that in many instances a police officer has the right to stop and detain an individual to determine his identity, or to maintain the *status quo* momentarily or obtain more information, even in the absence of probable cause to make an arrest. In these instances, the detention will be upheld if the officer is aware of specific and articulable facts reasonably warranting the suspicion that crime is being committed, has been committed, or is about to be committed.

The Court of Appeals decided that officer Kingzett necessarily did not harbor such suspicion, in light of the following exchange between Kingzett and counsel for appellee:

"Q. And when you asked him for his driver's license, was it your intent to charge him with committing a crime, or having violated the ordinance that you speak of?

"A. No, sir. We just wanted to identify him in case there was a beef about the accident a little later, that the police did not take any action at the time."

We do not find this dispositive of the issue. By that juncture in the night season, Kingzett had witnessed appellee's careless driving on a site open to the public thoroughfares and used by the public for vehicular traffic. In such circumstances, it was not unreasonable for the officer to request an inspection of appellee's operator's license and to request that appellee alight from his vehicle. *Mimms, supra.* Kingzett already was aware of specific and articulable facts reasonably warranting the suspicion that appellee had committed or was about to commit a crime.*

---

*R. C. 4507.02:

"No person * * * shall operate any motor vehicle upon a highway or any public or private property used by the public for purposes of vehicular travel or parking in this state unless such person, upon appli-

It was error for the Court of Common Pleas to grant appellee's motion to suppress evidence deriving from Kingzett's investigative frisk. The performance of the officer on the facts of this cause was constitutionally permissible.

In view of the foregoing, the judgment of the Court of Appeals is reversed and the cause is remanded for further proceedings not inconsistent with this opinion.

*Judgment reversed and cause remanded.*

O'NEILL, C. J., HERBERT, P. BROWN, SWEENEY and LOCHER, JJ., concur.

CELEBREZZE and W. BROWN, JJ., dissent.

---

cation, has been licensed as an operator or chauffeur by the registrar of motor vehicles * * *."

R. C. 4507.38(A):

"No person whose operator's or chauffeur's license has been suspended or revoked * * * shall drive any motor vehicle upon the highways or streets in this state while such license is suspended or revoked."

R. C. 4511.201, in part:

"No person shall operate a vehicle * * * on any public or private property other than streets or highways, without due regard for the safety of persons or property."

R. C. 4511.19, in part:

"No person who is under the influence of alcohol or any drug of abuse, or the combined influence of alcohol and any drug of abuse, shall operate any vehicle * * * within this state."

R. C. 2913.03(A):

"No person shall knowingly use or operate an aircraft, motor vehicle, motorcycle, motorboat, or other motor-propelled vehicle without the consent of the owner or person authorized to give consent."

R. C. 2913.03(B):

"No person shall knowingly use or operate an aircraft, motor vehicle, motorboat, or other motor-propelled vehicle without the consent of the owner or person authorized to give consent, and either remove it from this state, or keep possession of it for more than forty-eight hours."

R. C. 737.11, in part:

"The police force of a municipal corporation shall preserve the peace, protect persons and property, and obey and enforce all ordinances of the legislative authority thereof, and all criminal laws of the state and the United States."

See, also, R. C. 2923.01.

CELEBREZZE, J., dissenting. Because I believe that the crime with which appellee is charged, *i. e.*, carrying a concealed weapon, must necessarily be proven by the production of evidence which is the poison fruit of an illegal, pretextuous seizure, I must respectfully dissent from the opinion of the majority.

The record compiled at the hearing on the motion to suppress reveals that on the evening of May 4, 1976, seven Cleveland police officers drove onto the lot of a gasoline service station to execute a search warrant and seize any stolen C. B. radio units on the premises. Soon thereafter, appellee entered his vehicle and backed up, making contact with the bumper of a car parked behind him. Both drivers exited their vehicles, ascertained that the damage, if any, was negligible, and so informed the approaching police officers. The vehicle which had been bumped then drove away.

As appellee attempted to drive forward to the gas pumps, three policemen signaled him to stop, which he did. One officer then directed appellee to produce his driver's license. Appellee reached into his jacket, pulled out his wallet, and as he proceeded to look for the license he was ordered to step out of his vehicle. The arresting officer saw what appeared to be a bulge in appellee's pocket, and therefore conducted a limited search of appellee's outer clothing, whereupon he discovered the weapon which is the subject of the only offense charged.

The arresting officer, who was in plain clothes at the time, testified that he did not have any traffic citation tickets with him on the evening in question. He further testified that when he approached appellee he had no intention of charging him with the commission of any crime or the violation of any ordinance, and that, in fact, he never charged appellee with any offense other than carrying a concealed weapon. The officer also stated that he did not discern the bulge in appellee's clothing until after appellee had exited from his vehicle. The only explanation the officer gave for his request to see appellee's driver's license was that he "wanted to identify * * * [appellee] in case

there was a beef about the accident a little later * * *,"
this despite the fact that the arresting officer had heard
both drivers say there was no damage done to either ve-
hicle. The only reasons advanced by the officer for his
demand that appellee exit from his vehicle was that "* * *
[appellee] was fumbling around with the papers, and for
our own personal safety * * *," this despite the fact that
the three police officers were questioning appellee and a
single companion on a lighted service station lot.

Both the Fourth Amendment to the United States
Constitution and Section 14, Article I of the Ohio Con-
stitution guarantee the right of the people to be secure in
their persons, houses, papers and effects or possessions,
against unreasonable searches and seizures. It has been held
that a "seizure" of a person occurs whenever a police
officer, by means of physical force or show of authority,
in some way restrains the liberty of a citizen. *Terry* v. *Ohio*
(1968), 392 U. S. 1, 19, fn. 16. Thus, the issue to be de-
cided is whether the seizure which occurred when ap-
pellee was ordered to exit his vehicle can be justified con-
sistently with the standards of the Fourth Amendment to
the United States Constitution and Section 14, Article I of
the Ohio Constitution.

In arriving at the decision that the Court of Common
Pleas erred in granting appellee's motion to suppress evi-
dence derived from the pat down, the majority opinion re-
lies solely upon *Terry* v. *Ohio* (1968), 392 U. S. 1, and
*Pennsylvania* v. *Mimms* (1977), 434 U. S. 106, 54 L. Ed.
2d 331.

The *Terry* decision established that "* * * where a
police officer observes unusual conduct which leads him
reasonably to conclude in light of his experience that
criminal activity may be afoot and that the persons with
whom he is dealing may be armed and presently danger-
ous, where in the course of investigating this behavior he
identifies himself as a policeman and makes reasonable
inquiries and where nothing in the initial stages of the
encounter serves to dispel his reasonable fear for his own
or others' safety, he is entitled * * * to conduct a carefully

limited search of the outer clothing of such persons in an attempt to discover weapons * * *.'' *Terry,* at page 30. Nonetheless, the Supreme Court emphasized that ''* * * in justifying the particular intrusion the police officer must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion.'' *Id.,* at page 21.

In the *Mimms* case, decided this past December solely on the basis of certiorari papers, the Supreme Court justified the seizure of citizens by police under a standard much more lenient than the one established in *Terry.* Predicating the new rule on what it termed the ''legitimate and weighty'' interest of the state in police safety, the court held that ''* * * once a motor vehicle has been lawfully detained for a traffic violation, the police officers may order the driver to get out of the vehicle without violating the Fourth Amendment's proscription of unreasonable searches and seizures.'' *Mimms,* at page 337, fn. 6.

In two separate dissenting opinions, three members of the high court decried the majority's elimination of the traditional Fourth Amendment requirement that there be an individualized inquiry into the factual basis for each police intrusion into the lives of private citizens. The dissenters also took issue with the majority's assumption that ordering the routine traffic offender out of his car significantly enhances the policemen's safety. In addition, the dissenters disagreed with the majority's reference to this intrusion as ''at most a mere inconvenience,'' and voiced the fear that the sanctioning of such a uniform rule of police procedure could have the effect of nullifying former safeguards against arbitrary official harassment. With respect to these latter two points Mr. Justice Stevens made the following remarks:

''The Court cannot seriously believe that the risk to the arresting officer is so universal that his safety is always a reasonable justification for ordering a driver out of his car. The commuter on his way home to dinner, the

parent driving children to school, the tourist circling the Capitol, or the family on a Sunday afternoon outing hardly pose the same threat as a driver curbed after a high speed chase through a high-crime area late at night. Nor is it universally true that the driver's interest in remaining in the car is negligible. A woman stopped at night may fear for her own safety; a person in poor health may object to standing in the cold or rain; another who left home in haste to drive children or spouse to school or to the train may not be fully dressed; an elderly driver who presents no possible threat of violence may regard the police command as nothing more than an arrogant and unnecessary display of authority. * * *

"* * * [T]o eliminate any requirement that an officer be able to explain the reasons for his actions signals an abandonment of effective judicial supervision of this kind of seizure and leaves police discretion utterly without limits. Some citizens will be subjected to this minor indignity while others—perhaps those with more expensive cars, or different bumper stickers, or different-colored skin—may escape it entirely." *Mimms*, at pages 343-344.

Upon review of the facts, as determined from the record of the hearing on the motion to suppress, it is apparent that today the majority chooses to take a precipitous step beyond the United States Supreme Court decisions in *Terry* and *Mimms*. Certainly the testimony of the arresting officer reveals no "specific and articulable facts" upon which he could conclude that criminal activity was afoot, or that appellee was armed and dangerous. Furthermore, the officer specifically testified that it was never his intention to detain appellee in order to issue a traffic citation. I am thus drawn to the inexorable conclusion that when the police officer intruded upon constitutionally-guaranteed rights by ordering appellee out of his car he was acting upon nothing more substantial than an "inarticulable hunch."

In spite of the holding in the *Mimms* case, which I find to be an imprudent and ill-considered aberration, I

cannot agree with the majority's conclusion that the facts in the instant cause provided a sufficient justification for the invasion of personal liberties that occurred here. Neither the Fourth Amendment to the United States Constitution nor Section 14, Article I of the Ohio Constitution can be fairly construed so as to allow a police officer, wherever and whenever he has occasion to speak with the driver of a vehicle, to arbitrarily order that individual to step out of his vehicle. Accordingly, I dissent.

W. BROWN, J., concurs in the foregoing dissenting opinion.