OPINION
Appellant, Delores Santiago, appeals from the judgment entered by the Lake County Court of Common Pleas. Santiago was convicted of one count of possession of cocaine.
On October 29, 1999, Officer McCaffery of the Wickliffe Police Department was on routine patrol. During his patrol, he noticed Santiago and another individual sitting in a car parked along East 296th Street. The officer continued his patrol. Approximately five to ten minutes later, he returned to the area. Santiago was still in the car with the other individual.
The officer parked behind Santiago's car in order to check on her. He then approached the driver's side door and asked Santiago to get out of the car. He stated that the purpose of this was twofold. One reason was that he wanted to inquire about Santiago's well-being, since he had responded to a suicide attempt where she had overdosed on pills about one month earlier. His second reason was that he considered the two people sitting in the parked vehicle for that amount of time on the side of the road "somewhat suspicious."
Santiago got out of the car in response to the officer's request. As she was exiting the car, the officer spotted a homemade tinfoil pipe in Santiago's hand. He seized the pipe and placed Santiago in the back of his patrol car. He called for back-up, and another officer responded with a drug dog. The dog alerted to the presence of drugs in the car.
Santiago filed a motion to suppress all of the evidence arising from the encounter with Officer McCaffery. She claimed that this evidence was the result of an illegal seizure. A suppression hearing was held, wherein the court overruled Santiago's motion to suppress. Having lost the suppression hearing, Santiago pled no contest to the charge of possession of cocaine. She was then convicted of that offense.
Santiago raises one assignment of error:
 "The trial court erred to the prejudice of the defendant-appellant when it denied her motion to suppress."
 When reviewing a trial court's ruling on a motion to suppress, our review is bifurcated with respect to factual and legal issues. Factual determinations of the trial court should be accepted unless there was clear error.[1] The application of law to those facts, however, is reviewed de novo.[2]
There are three categories in which encounters with the police are classified. The first is a consensual encounter, the second is a brief investigatory stop, and the third is formal arrest.[3]
An officer may approach an individual in a street or other public place for the purposes of a consensual encounter. A consensual encounter is not a seizure, so no Fourth Amendment rights are invoked.[4] The individual must be free to terminate the consensual encounter or decline the officer's request.[5] A Fourth Amendment seizure has taken place "only if, in view of all the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave."[6]
In an investigatory stop, an officer may briefly detain an individual if the individual is engaged in unusual behavior.[7] To justify an investigatory stop, now known as a Terry stop, the officer must be able to "point to specific and articulable facts, which taken together with rational inferences from those facts, reasonably warrant an intrusion."[8]
When an officer approaches a parked vehicle and asks an individual to see their driver's license, no seizure has occurred.[9] Further, a seizure has not occurred when an officer approaches a vehicle and questions its occupants.[10] Therefore, as Officer McCaffery approached Santiago's vehicle, the situation was that of a consensual encounter.
In Mendenhall, the United States Supreme Court provided examples of situations where police conduct would no longer be classified as a consensual encounter, including: the presence of multiple officers, an officer displaying his weapon, the officer's language suggests that compliance with his request is compelled, and when an officer physically touches an individual.[11]
Officer McCaffery asked Santiago to exit the car. Santiago argues this was a seizure. We agree. The state cites Willowick v. Sable as authority that without the Mendenhall factors of coerciveness present, a seizure has not taken place. In Sable, we held that at the time the officer approached the vehicle, the Mendenhall factors were not present, therefore, it was a consensual encounter. The officer in Sable then witnessed the individual crumple a plastic bag that appeared to contain marijuana. The officer then ordered the individual out of the car, as he then had reasonable suspicion of criminal activity. We held that "[a] seizure then occurred when [the officer] ordered appellant out of the car."[12] Likewise, in Kinkopf, we held it was a consensual encounter when the officer approached the vehicle, but "a seizure occurred when [the officer] ordered appellant out of the vehicle."[13]
The Supreme Court of Ohio has also held that an officer is justified to ask an individual to step out of the car when there are specific and articulable facts warranting suspicion that a crime has taken place or is about to take place.[14] This is the Terry language. In Darrington, the officers approached a vehicle they had just witnessed strike another vehicle at a gas station. In State v. Reed, the Twelfth Appellate District held that an officer was justified to request an individual to exit his vehicle where the officer had reasonable suspicion that the individual had committed a crime.[15] We note the individuals inSable, Kinkopf, Reed, and Darrington had all engaged in some sort of suspicious behavior, that led to the officers' reasonable suspicion that criminal activity was afoot.
Following these cases, we hold that asking Santiago to step out of her vehicle exceeded the scope of a consensual encounter. A reasonable person would not feel they were at liberty to decline the officer's request. Further, we see no reasonable way for an individual in Santiago's scenario to terminate the encounter. If the person merely ignores the officer, this will heighten the officer's suspicion. If the individual was truly "free to leave" they could just drive off. We do not believe that a reasonable person would feel they are free to drive off after a uniformed police officer has asked them to step out of a parked vehicle.
The state notes that an officer is permitted to ask an individual to step out of a lawfully stopped vehicle when the officer is concerned for his own safety.[16] We agree. The key language is lawfully stopped. If a vehicle is lawfully stopped, then the officer has met the Terry
requirements for the stop or seizure. Officer safety is an underlying point of the Terry holding.[17] However, Santiago was not lawfully stopped. The state contends she was never stopped and that the entire situation was covered under the realm of a consensual encounter. It cannot be both ways.
We find that the officer was engaged in a consensual encounter up until he asked Santiago to step out of the vehicle. At this point the officer needed to point to specific and articuable facts that reasonably warranted an intrusion or Terry stop.
The Supreme Court of Ohio has adopted several factors to determine whether there was objective justification for a stop, including: (1) whether the area of the stop was a "high crime" area, (2) whether the officer knew of any criminal activity that had taken place in the area, (3) the time of day, and (4) whether the individual was engaged in suspicious conduct.[18]
In this case, Santiago was legally parked on a public street at 9:30 p.m. The officer did not indicate that she was engaged in suspicious conduct, other than remaining in the parked car for five to ten minutes. The officer did not testify that he was aware of any crime in the area that night or that the area was a high crime area. The officer must have reasonable suspicion that criminal activity has occurred or is about to occur. This reasonable suspicion is viewed in light of the totality of the circumstances.[19]
The officer testified that Santiago and her companion were just sitting in the car. He testified that they were not ducking their heads or doing other furtive movements that might indicate criminal activity.[20] They were just sitting there. The car was parked in close proximity to Santiago's residence. This conduct was consistent with innocent behavior.[21]
In State v. Jones, the court held that several individuals walking to and from a vehicle that was legally parked in a high crime area did not give the officers reasonable suspicion that justified a seizure of an individual seated in the vehicle.[22] The court further held that the officer's belief that the individuals were engaged in drug activity was "nothing more than an articulated hunch."[23]
The fact that Santiago had attempted suicide one month prior to this incident has little relevance for the purposes of the inquiry of whether the officer had reasonable suspicion that criminal activity was taking place. She was in the car with another individual. This greatly reduced the possibility of committing suicide. The fact that an individual has recently attempted suicide does not dictate that criminal activity is taking place.
The officer was more than justified to approach the vehicle for the purpose of a consensual encounter to check on the well-being of Santiago. We cannot think of a more appropriate reason to initiate a consensual encounter. However, the officer was not justified in asking Santiago to step out of the vehicle. This removed the situation from that of a consensual encounter, to one of an investigatory, or Terry, stop. The officer did not have the reasonable suspicion necessary to initiate aTerry stop.
Since the officer did not have reasonable suspicion to justify the stop, the motion to suppress the evidence obtained as a result of the stop should have been granted. Santiago's assignment of error has merit.
The judgment of the trial court is reversed. The case is remanded to the trial court for further proceedings consistent with this opinion.
CHRISTLEY, J., dissents, NADER, J., concurs.
[1] State v. Searls (1997), 118 Ohio App.3d 739, 741.
[2] State v. Harris (1994), 98 Ohio App.3d 543, 546.
[3] State v. Long (1998), 127 Ohio App.3d 328, 333.
[4] Florida v. Bostick (1991), 501 U.S. 429.
[5] Id. at 439.
[6] United States v. Mendenhall (1980), 446 U.S. 544, syllabus.
[7] Terry v. Ohio (1968), 392 U.S. 1.
[8] Id. at 21.
[9] United States v. Castellanos (C.A.D.C. 1984), 731 F.2d 979.
[10] State v. Boys (1998), 128 Ohio App.3d 640, 642; Willowick v.Sable (Dec. 12, 1997) Lake App. No. 96-L-189, unreported, 1997 WL 799569, at *5; Mentor v. Kinkopf (June 9. 2000), Lake App. No. 99-L-034, unreported, 2000 WL 757736, at*3.
[11] United States v. Mendenhall, 446 U.S. at 554.
[12] Sable, at *6.
[13] Kinkopf, at *3.
[14] State v. Darrington (1978), 54 Ohio St.2d 321, 324.
[15] State v. Reed (Sept. 11, 2000), Clermont App. No. CA99-11-102, unreported, 2000 WL 1290388.
[16] Maryland v. Wilson (1997), 519 U.S. 408; Pennsylvania v. Mimms
(1977), 434 U.S. 106.
[17] Terry v. Ohio, 392 U.S. at 23.
[18] State v. Freeman (1980), 64 Ohio St.2d 291, 295.
[19] State v. Bobo (1998), 37 Ohio St.3d 177, paragraph one of the syllabus.
[20] See State v. McDonald (Aug. 27, 1993), Trumbull App. No. 91-T-4640, unreported, 1993 Ohio App. LEXIS 4152.
[21] Brown v. Texas (1979), 443 U.S. 47; State v. Bird (1988),49 Ohio App.3d 156, 157.
[22] State v. Jones (1990), 70 Ohio App.3d 554.
[23] Id. at 559.