JOURNAL ENTRY AND OPINION *Page 3 
{¶ 1} Defendant-appellant, Brendan Murray (Murray), appeals the trial court's denial of his motion to suppress. For the following reasons below, we affirm.
 {¶ 2} On November 27, 2007, a Cuyahoga County grand jury indicted Murray on one count of possession of drugs, namely, crack cocaine, in an amount less than one gram.
 {¶ 3} The facts giving rise to the instant case occurred on October 26, 2007, at approximately 11:50 p.m., in the Grenada Gardens apartment complex, located at 4471 Grenada Boulevard, Warrensville Heights, Ohio.
 {¶ 4} Warrensville Heights police officer, Adam Scherrer ("Scherrer"), drove past a parked 1989 white Chevrolet van with skilled labor signs on the sides. Scherrer recalled that he had seen the same van one week earlier parked in the same general area for less than thirty minutes.
 {¶ 5} When Scherrer drove past the front of the van, he made eye contact with the driver. The driver appeared startled and made furtive movements as if to conceal something.
 {¶ 6} Scherrer turned his patrol car around, parked it behind the van, and turned on his light to illuminate the area because the lighting was insufficient. At no point did Scherrer activate his emergency lights or his siren. *Page 4 
 {¶ 7} Scherrer approached the van in order to have a conversation with Murray, the driver. The driver's side window was rolled down, and Scherrer noticed that the keys to the van were not in the ignition but lying on the console. Scherrer asked Murray what he was doing; Murray responded that he was visiting his best friend, Jay, at one of the nearby apartment buildings, although Murray could not identify which apartment building. Norman Hayes ("Hayes") was also in the vehicle, sitting in the front passenger's seat.
 {¶ 8} Scherrer smelled a strong odor of alcohol and observed that Murray's eyes were bloodshot. Because Scherrer believed Murray to be impaired while being in physical control of a vehicle, he decided to detain him. Scherrer asked for identification and went back to his car to wait for backup to arrive. Scherrer then asked Murray to step out of the van because he believed criminal activity was afoot. He conducted a pat-down search of Murray and did not find any weapons or drugs.
 {¶ 9} Scherrer again asked Murray what his purpose was for being at the Grenada Gardens. This time, Murray responded that he was visiting his girlfriend's friend, Jay, but could not provide Jay's last name, apartment number, or which floor he resided on, increasing Scherrer's suspicions.
 {¶ 10} Scherrer next asked Murray if he had anything illegal in the van. Murray responded negatively and voluntarily suggested that Scherrer check the van. Scherrer did not ask to check the van. Scherrer found a pail directly *Page 5 
behind the passenger's seat with cans and bottles of alcohol, either still wet with liquid on them or partially empty. Scherrer also found two crack pipes with residue and four rocks of crack cocaine wrapped in a crumpled dollar bill.
 {¶ 11} Scherrer read Murray and Hayes their Miranda rights and arrested them. Murray then admitted that the confiscated items belonged to him and not to Hayes.
 {¶ 12} On December 26, 2007, Murray filed a motion to suppress the evidence and statements.
 {¶ 13} On March 25, 2008, the trial court conducted a hearing on Murray's motion to suppress. The trial court determined that the initial encounter between Scherrer and Murray constituted a consensual encounter until the moment Scherrer asked Murray to step out of the van. At this point, the trial court found that the encounter became an investigatory stop. The trial court further held that, upon discovering the paraphernalia in the van, Scherrer provided Murray with a recitation of his Miranda rights. As such, the trial court denied Murray his motion.
 {¶ 14} On the same day, Murray entered a plea of no contest, and thereafter the trial court found Murray guilty based upon the evidence proffered.
 {¶ 15} On April 23, 2008, the trial court sentenced Murray to one year of community control sanctions.
 {¶ 16} Murray appeals, asserting one assignment of error for our review. *Page 6 
 ASSIGNMENT OF ERROR
 "The trial court erred and/or abused its discretion in denying appellant's suppression motion."
 {¶ 17} Murray argues that the trial court erred when it denied his motion to suppress.
 {¶ 18} The standard of review regarding motions to suppress is set forth by the Ohio Supreme Court as follows:
 "Appellate review of a motion to suppress presents a mixed question of law and fact. When considering a motion to suppress, the trial court assumes the role of trier of fact and is therefore in the best position to resolve factual questions and evaluate the credibility of witnesses. Consequently, an appellate court must accept the trial court's findings of fact if they are supported by competent, credible evidence.
 Accepting these facts as true, the appellate court must then independently determine, without deference to the conclusion of the trial court, whether the facts satisfy the applicable legal standard." State v. Burnside, 100 Ohio St.3d 152, 2003-Ohio-5372. (Internal citations omitted.)
 {¶ 19} Thus, "[o]ur review of the trial court's decision to deny the motion to suppress is de novo." City of Strongsville v. Carr, Cuyahoga App. No. 89666, 2008-Ohio-907.
 {¶ 20} The Fourth Amendment to the United States Constitution guarantees that "[t]he right of the people to be secure in their persons * * * against unreasonable searches and seizures, shall not be violated * * *." This right also applies to states pursuant to Mapp v. Ohio (1961),367 U.S. 643; see, also, Section 14, Article I, of the Ohio Constitution. *Page 7 
 {¶ 21} There exists three classifications of interactions between police and private citizens: a consensual encounter, an investigatory stop, and an arrest. Lakewood v. McLaughlin, Cuyahoga App. No. 75134, citing Florida v. Royer (1982), 460 U.S. 491.
 "An officer may approach an individual in a street or other public place for the purpose of a consensual encounter. A consensual encounter is not a seizure, so no Fourth Amendment rights are invoked. The individual must be free to terminate the consensual encounter or decline the officer's request." Florida v. Bostick (1991), 501 U.S. 429.
 {¶ 22} In the case sub judice, the record reveals that Murray's van was parked in an area of high drug activity and that Scherrer's attention was drawn to the vehicle for the following reasons: it was late at night; he had seen the van with distinctive markings on it one week before parked in the same area for less than thirty minutes; Murray appeared startled to see the patrol car; and lastly, Murray appeared to make furtive gestures as if to conceal something.
 {¶ 23} Notably, the van was parked legally, was not running, and did not appear to be in violation of any laws. Scherrer did not activate his emergency lights or his siren. After parking the patrol car behind the van, Scherrer illuminated his spotlight for safety because it was late at night and the area was sparsely lit.
 {¶ 24} Upon approach, Murray's window was already rolled down, and Scherrer simply asked Murray what was going on. Scherrer immediately noticed that *Page 8 
Murray's eyes were watery and bloodshot, and he smelled a strong odor of alcohol. Murray, upon request, informed Scherrer that he had been drinking alcohol earlier in the evening. Murray also indicated that he had just visited his best friend, Jay, although he did not specify which of the three apartment buildings he had visited.
 {¶ 25} Scherrer then asked for Murray's and Hayes's identification, returned to the patrol car, and called for backup because he believed at this point that something was amiss.
 "Encounters are consensual where police merely approach a person in a public place, engage the person in conversation, request information, and the person is free not to answer and walk away. * * * The request to examine one's identification does not make an encounter nonconsensual. * * * Nor does the request to search a person's belongings." State v. Taylor (1995), 106 Ohio App.3d 741.
 {¶ 26} Moreover, "[w]hen an officer approaches a parked vehicle and asks an individual to see their driver's license, no seizure has occurred. Further, a seizure has not occurred when an officer approaches a vehicle and questions its occupants." State v. Santiago, 11th Dist. No. 2000-L-168, 2002-Ohio-1469. (Internal citations omitted.)
 {¶ 27} In applying the law to the facts of this case, we find that, up until the moment Murray is asked to step out of the van, Scherrer and Murray were engaged *Page 9 
in a consensual encounter. Scherrer even testified that if the van had pulled away, he wasn't even sure if he would have followed.
 {¶ 28} As it pertains to an investigatory stop, "a police officer may in appropriate circumstances and in an appropriate manner approach a person for purposes of investigating possible criminal behavior even though there is no probable cause to make an arrest." Terry v. Ohio
(1968), 392 U.S. 1.
 {¶ 29} "An investigative stop does not violate the Fourth Amendment to the United States Constitution if the police have a reasonable suspicion that `the person stopped is, or is about to be, engaged in criminal activity.'" State v. Harrell, Cuyahoga App. No. 89015, 2007-Ohio-5322, quoting United States v. Cortez (1981), 449 U.S. 411.
 {¶ 30} As such, the United States Supreme Court has held that:
 "[I]n determining whether the officer acted reasonably in such circumstances, due weight must be given, not to his inchoate and unparticularized suspicion or `hunch,' but to the specific reasonable inferences which he is entitled to draw from the facts in light of his experience." Terry v. Ohio (1968), 392 U.S. 1.
 {¶ 31} Further, "[t]he propriety of an investigative stop by a police officer must be viewed in light of the totality of the surrounding circumstances." State v. Bobo (1988), 37 Ohio St.3d 177, paragraph one of the syllabus.
 {¶ 32} According to the United States Supreme Court:
 "[A] person has been `seized' within the meaning of the Fourth Amendment only if, in view of all of the circumstances surrounding the incident, a reasonable person would have *Page 10 believed that he was not free to leave. Examples of circumstances that might indicate a seizure, even where the person did not attempt to leave, would be the threatening presence of several officers, the display of a weapon by an officer, some physical touching of the person of the citizen, or the use of language or tone of voice indicating that compliance with the officer's request might be compelled." State v. Mendenhall (1980), 446 U.S. 544.
 {¶ 33} When backup arrived, Scherrer approached the van for a second time and asked Murray to step out of the van. "[A]n officer is justified to ask an individual to step out of the car when there are specific and articulable facts warranting suspicion that a crime has taken place or is about to take place." Santiago, at _8, citing State v.Darrington (1978), 54 Ohio St.2d 321.
 {¶ 34} Specifically,
 "The Supreme Court of Ohio has adopted several factors to determine whether there was objective justification for a stop, including: (1) whether the area of the stop was a `high crime area,' (2) whether the officer knew of any criminal activity that had taken place in the area, (3) the time of day, and (4) whether the individual was engaged in specific conduct." Santiago, at _10, citing State v. Freeman (1980), 64 Ohio St.2d 291.
 {¶ 35} Here, although Scherrer did not know of any specific criminal activity that had taken place in the area, the area was a high-crime area and the time was approximately 11:50 p.m. Additionally, Scherrer believed Murray was *Page 11 
impaired and in physical control of a motor vehicle, a lesser included offense of operating a vehicle while intoxicated, thus giving rise to specific and articulable facts warranting suspicion that a crime had taken place.
 {¶ 36} Moreover, Scherrer's encounter with Murray changed to an investigatory stop when Scherrer asked Murray to step out of the van, because a reasonable person would not feel free to decline Scherrer's request.
 {¶ 37} Upon exit from the van, Scherrer conducted a pat-down search of Murray for weapons. Scherrer again asked Murray his purpose for being parked in the area, and this time Murray responded, inconsistently, that he was visiting his girlfriend's friend, Jay, at Grenada Gardens, but he could not provide Jay's last name, his apartment number, or what floor he lived on. Thereafter, Scherrer asked Murray if he had anything illegal in the van. Murray replied negatively and offered Scherrer the opportunity to check the van.
 {¶ 38} The officers then requested Hayes to exit the vehicle, and Scherrer conducted a search of the vehicle that revealed open containers, two crack pipes with residue, and four rocks of crack cocaine wrapped in a crumpled dollar bill, giving rise to probable cause to arrest. The United States Supreme Court has held that: "Probable cause means a fair probability that contraband or evidence of a crime will be found * * *." Alabama v. White (1990), 496 U.S. 325. (Internal citation omitted.)
 {¶ 39} After reading Murray his Miranda rights, the record reveals that Murray admitted that the confiscated items belonged to him and not to Hayes. *Page 12 
 {¶ 40} Thus, we cannot find that the trial court erred when it denied Murray's motion to suppress.
 {¶ 41} Murray's sole assignment of error is overruled.
Judgment affirmed.
It is ordered that appellee recover from appellant costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
MARY J. BOYLE, J., and JAMES J. SWEENEY, J., CONCUR *Page 1