[Cite as *State v. Cuffman*, 2011-Ohio-4324.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
### CRAWFORD COUNTY

STATE OF OHIO,

      PLAINTIFF-APPELLEE,             CASE NO.  3-11-01

      v.

LARRY A. CUFFMAN,             O P I N I O N

      DEFENDANT-APPELLANT.

STATE OF OHIO,

      PLAINTIFF-APPELLEE,             CASE NO.  3-11-02

      v.

LARRY A. CUFFMAN,             O P I N I O N

      DEFENDANT-APPELLANT.

Appeals from Crawford County Common Pleas Court
Trial Court Nos. 10-CR-0064 and 07-CR-0085

Judgments Affirmed

Date of Decision:   August 29, 2011

APPEARANCES:

    *John Spiegel*  for Appellant

    *Clifford J. Murphy*  for Appellee

**PRESTON, J.**

{¶1} Defendant-appellant, Larry A. Cuffman (hereinafter "Cuffman"), appeals the Crawford County Court of Common Pleas' judgment of conviction for possession of drugs and its judgment revoking his previously imposed community control based upon that conviction. For the reasons that follow, we affirm.

{¶2} Around 11:00 p.m. on May 4, 2010, Lieutenant Assenheimer observed a man enter a known drug house for a couple minutes and then quickly leave on foot. (Aug. 2, 2010 Tr. at 5, 43-44). Assenheimer called Officer R. Thomas Walker and gave him a physical description of the man. (Id.). Officer Walker saw the man and recognized him as Cuffman. (Id. at 5-7). Walker told Assenheimer that the man was Cuffman, and Assenheimer indicated that Cuffman's wife had an outstanding warrant for her arrest. (Id. at 44-46). Lieutenant Assenheimer then asked Walker to talk to Cuffman about his wife's whereabouts and about his activity at the known drug house. (Id. at 8-9, 21-22, 44-46). During the encounter with Cuffman, Walker, who was accompanied by Auxiliary Officer Jager, attempted to frisk Cuffman for weapons, but Cuffman resisted and began to flee. (Id. at 13-17, 48). Officer Jager lunged at Cuffman's feet and tripped him. (Id. at 17-18). Cuffman was taken into custody, and, at that point, Assenheimer discovered two aluminum foil balls believed to contain heroin lying at Cuffman's

feet. (Id. at 48-49). A third aluminum foil ball believed to contain heroin was found about five to ten (5-10) feet from where the struggle ended. (Id. at 70, 82).

{¶3} On May 10, 2010, the Crawford County Grand Jury indicted Cuffman on one count of possession of drugs in violation of R.C. 2925.11(A), (C)(6)(a), a fifth degree felony, which was assigned case no. 10-CR-0064. (Doc. No. 1). On May 19, 2010, Cuffman filed a written plea of not guilty. (Doc. No. 5).

{¶4} As a result of the aforementioned indictment, on May 25, 2010, the State filed a motion to show cause why Cuffman's community control in case no. 07CR0085 should not be revoked. (Doc. No. 38).

{¶5} On July 6, 2010, Cuffman filed a motion to suppress the evidence seized as a result of the May 4, 2010 stop in both cases. (Doc. Nos. 11, 41). The State filed responses in both cases on July 8, 2010. (Doc. Nos. 12, 42). On August 2, 2010, the trial court held a hearing on the motion, and the trial court overruled the motion on September 9, 2010. (Doc. Nos. 17, 20).

{¶6} On October 21-22, 2010, a jury trial was held on the possession charge, and the jury found Cuffman guilty. (Doc. No. 26). On November 16, 2010, Cuffman filed a motion for a new trial. The trial court overruled the motion on December 3, 2010. (Doc. Nos. 31, 33).

{¶7} On December 23, 2010, Cuffman was sentenced to ten (10) months imprisonment in case no. 10-CR-0064. (Doc. No. 34). On that same day, the trial

court found that, as a result of his drug possession conviction, Cuffman violated the terms of his community control in case no. 07-CR-0085. The trial court revoked Cuffman's community control and imposed a sentence of ten (10) months for the violation. (Doc. No. 53). In both case nos. 10-CR-0064 and 07-CR-0085, the trial court ordered that the terms imposed be served consecutive to one another for a total term of twenty (20) months imprisonment. (Doc. Nos. 34, 53).

{¶8} On January 21, 2011, Cuffman filed notices of appeal in case nos. 10-CR-0064 and 07-CR-0085 and a motion to consolidate. (Doc. Nos. 38, 56). The appeal from case no. 10-CR-0064 was assigned appellate case no. 3-11-01, and the appeal from case no. 07-CR-0085 was assigned appellate case no. 3-11-02. On January 27, 2010, this Court consolidated the cases for appeal.

{¶9} Cuffman now appeals raising three assignments of error for our review.

## ASSIGNMENT OF ERROR NO. I

**THE TRIAL COURT ERRED IN OVERRULING THE MOTION TO SUPPRESS THE FRUITS OF THE SEARCH OF DEFENDANT.**

{¶10} In his first assignment of error, Cuffman argues that the trial court erred by overruling his motion to suppress the evidence seized as a result of the May 4, 2010 stop. Cuffman argues that the officer did not have a sufficient justification to perform a *Terry* frisk simply because he was seen leaving a known

drug house. Cuffman further argues that, even if the *Terry* frisk was lawful, officers exceeded *Terry*'s scope when they "forced [him] to empty his pockets." (Appellant's Brief at 7). Cuffman further argues that officers were not justified in seizing the cigarette pack after he removed it from his pocket, since it could not have contained a weapon. Finally, Cuffman argues that his encounter with police was not "consensual," and the officers' reason for stopping him was pre-textual from the beginning.

{¶11} A review of the denial of a motion to suppress involves mixed questions of law and fact. *State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, 797 N.E.2d 71, ¶8, citing *State v. Mills* (1992), 62 Ohio St.3d 357, 366, 582 N.E.2d 972. At a suppression hearing, the trial court assumes the role of trier of fact and, as such, is in the best position to evaluate the evidence and the credibility of witnesses. Id.

{¶12} When reviewing a ruling on a motion to suppress, deference is given to the trial court's findings of fact so long as they are supported by competent, credible evidence. *Burnside* at ¶8. With respect to the trial court's conclusions of law, however, our standard of review is de novo, and we must decide whether the facts satisfy the applicable legal standard. *State v. McNamara* (1997), 124 Ohio App.3d 706, 710, 707 N.E.2d 539.

{¶13} At the suppression hearing, Bucyrus Police Department Lieutenant Neil Assenheimer testified that, around 11:00 p.m. on May 4, 2010, he observed a man, enter a known drug house, stay for a few minutes, and then leave walking away rapidly. (Aug. 2, 2010 Tr. at 42-45). Assenheimer testified that he called Walker, who was working in the area with Auxiliary Officer Jager, and informed him of what he observed. (Id. at 44). Assenheimer testified that Walker identified the man as Cuffman, and he told Walker to attempt to talk to Cuffman about the whereabouts of his wife, who had an active warrant. (Id. at 44-45, 47). Assenheimer instructed Walker to ask Cuffman whether his wife was at home so they could execute the warrant and to question Cuffman about what was going on tonight at the house he left. (Id. at 44-45). Assenheimer testified that, when he arrived on the scene after Walker and Jager encountered Cuffman, Cuffman initially appeared to be cooperating but suddenly broke free and attempted to flee. (Id. at 48). He further testified that they managed to take Cuffman to the ground and take him into custody. (Id.). At that point, Assenheimer discovered aluminum foil balls at Cuffman's feet, which he believed contained heroin. (Id.). Assenheimer testified that Cuffman denied that the aluminum foil balls belonged to him, and Cuffman stated that it was common to see heroin laying on the ground in that area of town. (Id. at 49). He further testified that Cuffman stated that he ran in order to tell his wife about her warrant. (Id.).

{¶14} On cross-examination, Assenheimer testified that he did not know whether Cuffman had any prior drug convictions. (Id. at 52). He testified that Cuffman was discovered with a knife on one particular occasion. (Id. at 53). He testified that he did know that Cuffman has had warrants and has been involved in drug usage and possible drug trafficking in the past, as reported by Walker. (Id. at 54). Assenheimer testified that he called Walker using his cell phone because the locations that they watch often have police scanners. (Id. at 55). He testified that he found two aluminum foil balls at Cuffman's feet, and then Officer Swalley found another aluminum foil ball five to ten (5-10) feet down the sidewalk from where the struggle ended. (Id. at 63, 70, 82).

{¶15} Bucyrus City Patrolman R. Thomas Walker testified that, while he was doing patrol work around 11:00 p.m. on May 4, 2010, Lieutenant Assenheimer observed a subject leave a known drug house. (Id. at 5-6). Walker testified that Assenheimer provided him with a physical description of the individual and asked him to check on the subject (Id.). Walker testified that he observed the subject walking at a "pretty good pace," and that eventually he was able to identify him as Cuffman. (Id. at 7-8). Walker testified that he has had previous contact with Cuffman, and that Cuffman was a "known drug offender, possibly involved in drug sales." (Id. at 8). Walker testified that Cuffman "started walking faster" to the point of jogging or running when Cuffman saw the police

cruiser. (Id. at 10). Walker testified that he was also aware of the fact that Cuffman's wife had an outstanding warrant, and that he encountered Cuffman because of his wife's warrant and because he suspected Cuffman might be in possession of drugs. (Id. at 9-10). Walker testified that he parked his cruiser, exited the cruiser, and asked Cuffman to stop, which he did. (Id. at 11). Walker testified that, when he was standing there talking to Cuffman about four or five feet away, Cuffman's voice was cracking and Cuffman was visibly shaking. (Id. at 12). Cuffman also removed his right hand from his pocket but would not remove his left hand from his pocket, which concerned Walker. (Id. at 12-13). Walker testified that he feared Cuffman may have a weapon so he asked Cuffman if he would mind if he patted him down for weapons. (Id. at 13). Walker testified that Cuffman initially agreed, so he placed his hand on Cuffman's right arm, turned him toward the cruiser, and started to walk him to the cruiser. (Id. at 14). Walker testified that, once they arrived at the cruiser, Cuffman removed his left hand from his pocket, and "it looked like he had cigarettes or something in there but he was cupping it very tightly." (Id.). Walker testified that, after Cuffman removed the cigarettes from his left pocket, there was still an unidentified bulge in the pocket so he reached around to pat Cuffman's pocket, but Cuffman immediately began "pulling away, jerking you know, fighting like crazy with this." (Id. at 14-15). Walker asked Cuffman to stop several times, but Cuffman refused. (Id.). Walker

testified that he asked to pat down Cuffman, not search him, and that he did not want to reach in Cuffman's pocket but "make sure there was no knife or something in that particular pocket." (Id.). Walker testified that he has arrested Cuffman a couple of times, and that on at least one occasion Cuffman has resisted arrest. (Id. at 16). Walker testified that Cuffman's behavior that night— specifically, his physical shaking and his cracked voice—was different than it was during his previous arrests. (Id.).

{¶16} On cross-examination, Walker testified that Assenheimer contacted him twice that night using his cell phone before apprehending Cuffman. (Id. at 20). Walker testified that they use cell phones since many of the drug houses have police scanners in them. (Id. at 22). Walker testified that Cuffman was a known drug offender leaving a known drug house. (Id. at 24). Walker testified that he did not know whether Cuffman had any drug convictions, but he had knowledge of Cuffman's drug involvement from police intelligence. (Id. at 25). Walker testified that he has never found a weapon on Cuffman in the past. (Id. at 33). Walker testified that Cuffman placed the contents of his right pants pocket onto the hood of the cruiser, but Cuffman held up his hand from his left pants pocket and said "I don't have anything and immediately put it back in his pocket." (Id. at 37-38).

{¶17} Auxiliary Officer Josh Jager testified that he was working with Walker on the night of May 4, 2010 when they spotted Cuffman. (Id. at 73-75).

Jager testified that they yelled, "Hey, Larry," but Cuffman sped up and continued walking. (Id. at 75). Jager testified that they were going to stop Cuffman to advise him that his wife had a warrant. (Id. at 76). Jager testified that Cuffman came over to talk to them and his left hand was in his pocket and he was shaking and sweating. (Id.). Jager testified that they advised Cuffman that his wife had a warrant, and Cuffman started to walk away while stating he was going to go tell his wife about the warrant. (Id.). Jager testified that they asked Cuffman if he had anything in his pocket that they needed to know about, and Cuffman stated that he did not have any drugs. (Id.). Jager testified that they never asked Cuffman about drugs in his pocket. (Id.). Jager testified that Cuffman still had his hand in his pocket so they asked if they could pat him down for weapons. (Id. at 77). Jager testified that Cuffman took his left hand out of his pocket, and he had cigarettes cupped in his hand, which he placed on the police cruiser. (Id.). Jager testified that Walker then attempted to pat down Cuffman, and Cuffman "became irate, threw his right elbow back and that's when the struggle started." (Id.). Jager testified that, after he tackled Cuffman, he observed two balls of foil lying beside Cuffman on the sidewalk. (Id. at 80). Jager testified that Swalley discovered a third ball of foil six to eight (6-8) feet down from where Cuffman was tackled. (Id. at 81-82).

{¶18} Several of Cuffman's arguments lack factual support in the record. To begin with, law enforcement did not force Cuffman to remove items from his pants pockets; rather, Cuffman voluntarily removed items from his pockets in an effort to demonstrate that he did not have any weapons. Additionally, law enforcement did not seize his pack of cigarettes. Cuffman either voluntarily placed the pack of cigarettes on top of the police cruiser or placed them back into his pocket before he attempted to flee. Regardless, the testimony does not indicate that the heroin was found in the cigarette box, but was lying in plain sight on the sidewalk near Cuffman so his argument regarding the alleged seizure of the cigarette box is a red herring.

{¶19} The real issue in this case is whether the officers were permitted to pat-down/frisk Cuffman pursuant to *Terry v. Ohio* (1968), 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889. The U.S. Supreme Court in *Terry v. Ohio* concluded that:

> **[W]here a police officer observes unusual conduct which leads him reasonably to conclude in light of his experience that criminal activity may be afoot and that the persons with whom he is dealing may be armed and presently dangerous, where in the course of investigating this behavior he identifies himself as a policeman and makes reasonable inquiries, and where nothing in the initial stages of the encounter serves to dispel his reasonable fear for his own or others' safety, he is entitled for the protection of himself and others in the area to conduct a carefully limited search of the outer clothing of such persons in an attempt to discover weapons which might be used to assault him.**

392 U.S. at 30. The Ohio Supreme Court, relying on *Terry*, has similarly held that "[w]here a police officer, during an investigative stop, has a reasonable suspicion that an individual is armed based on the totality of the circumstances, the officer may initiate a protective search for the safety of himself and others." *State v. Bobo* (1988), 37 Ohio St.3d 177, 524 N.E.2d 489, at paragraph two of the syllabus. See, also, *State v. Darrington* (1978), 54 Ohio St.2d 321, 322, 376 N.E.2d 954. The Ohio Supreme Court has also observed that: "[t]he right to frisk is virtually automatic when individuals are suspected of committing a crime, like drug trafficking, for which they are likely to be armed." *State v. Evans* (1993), 67 Ohio St.3d 405, 413, 618 N.E.2d 162, citing *State v. Williams* (1990), 51 Ohio St.3d 58, 554 N.E.2d 108 and *United States v. Ceballos* (E.D.N.Y.1989), 719 F.Supp. 119, 126. See, also, *State v. Jordan*, 104 Ohio St.3d 21, 2004-Ohio-6085, 817 N.E.2d 864, ¶61, superseded by statute as stated in *State v. Singleton*, 124 Ohio St.3d 173, 2009-Ohio-6434, 920 N.E.2d 958.

{¶20} Law enforcement officers herein had a reasonable suspicion that Cuffman was armed. To begin with, prior to the pat-down, law enforcement officers witnessed Cuffman enter a known drug house in a high drug area after 11:00 p.m. for a few minutes and then quickly leave on foot, so law enforcement suspected Cuffman had just engaged in drug trafficking. This fact, in and of itself, makes the officer's right to frisk Cuffman "virtually automatic." *Evans*, 67 Ohio

St.3d at 413; *Jordan*, 2004-Ohio-6085, at ¶61. Aside from that, law enforcement officers were aware that Cuffman: was previously involved in drug related activity; had previously resisted arrest; and was previously found with a knife. Additionally, Patrolman Walker and Auxiliary Officer Jager testified that Cuffman was very nervous, to the point of visibly shaking and sweating, and his voice was cracking when he spoke to them, which was unusual behavior for Cuffman who had been arrested several other times. The officers also testified that Cuffman continued to keep his left hand in his pants pocket, while talking to them, though he removed his right hand from his pants pocket. Patrolman Walker testified that there was a remaining bulge in Cuffman's left pocket even after Cuffman removed the contents of that pocket. In light of all of these circumstances, we conclude that law enforcement had a reasonable suspicion that Cuffman had a weapon, and therefore, rightfully frisked Cuffman under *Terry v. Ohio*, supra.

{¶21} Finally, Cuffman argues that his initial encounter with law enforcement was not "consensual," and furthermore, that law enforcement's offered reason for stopping him (to inform him of his wife's warrant) was pretextual. These arguments lack merit. "A consensual encounter occurs when a police officer approaches a person in a public place, engages the person in conversation or requests information, and the person remains free not to answer and walk away." *State v. Swonger*, 10th Dist. No. 09AP-1166, 2010-Ohio-4995,

¶9, citing *U.S. v. Mendenhall* (1980), 446 U.S. 544, 553, 100 S.Ct. at 1870, 64 L.E.2d 497. "Fourth Amendment guarantees are not implicated in such an encounter unless the officer has by either physical force or show of authority restrained the person's liberty so that a reasonable person would not feel free to decline the officer's requests or otherwise terminate the encounter." Id., citing *Mendenhall*, 446 U.S. at 554. Here, law enforcement yelled "Hey, Larry" to Cuffman while he was walking down the sidewalk in order to ask him a few questions. The officers remained four to five (4-5) feet away from Cuffman during their conversation, and the officers did not use any physical force or exercise any show of force. Under these circumstances, a reasonable person would have felt free to terminate the conversation and simply walk away. In fact, the testimony indicates that Cuffman did begin walking away from the conversation after the officers informed him of his wife's outstanding warrant. Cuffman apparently decided to remain there, though, when the officers began to question him further. The mere approach and questions of Officers Walker and Jager, without more, does not constitute a 'show of authority' sufficient to cause a reasonable person to believe that he/she was not free to leave. *State v. Patrick* (Oct. 22, 1999), 3d Dist. No. 9-99-36, at *2, citing *California v. Hodari D.* (1991), 499 U.S. 621, 628-29, 111 S.Ct. 1547, 113 L.Ed.2d 690. Rather, this is "'clearly the sort of consensual encounter that implicates no Fourth Amendment interest.'"

Id., quoting *Florida v. Rodriguez* (1984), 469 U.S. 1, 5-6, 105 S.Ct. 308, 83 L.Ed.2d 165.

{¶22} We further note that *even if* this was not a consensual encounter, the stop was nonetheless permissible under *Terry*, supra, since the officers had a reasonable, articulable suspicion that crime was afoot—namely, that Cuffman had just participated in drug trafficking and may be in possession of drugs. As a final matter, the officers' subjective intentions in initiating the encounter with Cuffman are irrelevant for Fourth Amendment purposes. See *Whren v. United States* (1996), 517 U.S. 806, 813-14, 116 S.Ct. 1769, 135 L.Ed.2d 89 and *Arkansas v. Sullivan* (2001), 532 U.S. 769, 771-72, 121 S.Ct. 1876, 149 L.Ed.2d 994. As such, Cuffman's pre-textual argument is without merit.

{¶23} Cuffman's first assignment of error is, therefore, overruled.

### ASSIGNMENT OF ERROR NO. II

**THE TRIAL COURT ERRED IN OVERRULING THE MOTION FOR NEW TRIAL BASED UPON MISCONDUCT OF A JURY MEMBER.**

{¶24} In his second assignment of error, Cuffman argues that the trial court erred in holding a hearing upon his motion for a new trial, and furthermore, erred by denying the motion when juror misconduct was alleged. Cuffman argues that one of the jurors, Ms. Emerson, had previously dated his brother and was in a bar

fight with his wife. Cuffman averred that he did not recognize Ms. Emerson until after the trial, however, because she was using a different name.

{¶25} R.C. 2945.79 provides that:

**A new trial, after a verdict of conviction, may be granted on the application of the defendant for any of the following causes affecting materially his substantial rights:**
**\* \* \***
**(B) Misconduct of the jury, prosecuting attorney, or the witnesses for the state;**

See, also, Crim.R. 33(A)(2). Whether to grant a motion for a new trial is within the trial court's discretion, and therefore, an appellate court reviews for an abuse of discretion. *State v. Schiebel* (1990), 55 Ohio St.3d 71, 76, 564 N.E.2d 54. See, also, *State v. Maag*, 3d Dist. No. 5-03-32, 2005-Ohio-3761, ¶92. The term abuse of discretion connotes more than an error of judgment; rather, it implies that the court's attitude was unreasonable, arbitrary, or unconscionable. *State v. Adams* (1980), 62 Ohio St.2d 151, 157-58, 404 N.E.2d 144.

{¶26} Upon review, we cannot conclude that the trial court abused its discretion by denying Cuffman's motion for a new trial. The trial court cautioned the potential jurors that a connection with the parties could result in their dismissal. (Oct. 21, 2010 Tr. at 9). Defense counsel asked each prospective juror whether they knew Cuffman, and Ms. Emerson did not say anything. (Id. at 32-33). Defense counsel, however, did not ask the jurors whether they knew any of

Cuffman's family members. In support of his motion for a new trial, Cuffman averred that Ms. Emerson "probably" denied knowing him because she "had it in for me and my wife." (Doc. No. 31). Cuffman provided no evidence, however, that Ms. Emerson actually knew of the relationship between his brother, his wife, and him. Furthermore, there is no evidence that Ms. Emerson was biased against Cuffman besides Cuffman's self-serving averment. Under these circumstances, we cannot conclude that the trial court abused its discretion by denying the motion for a new trial. See, e.g., *City of Garfield Heights v. Marek* (June 16, 1988), 8th Dist. No. 54145.

{¶27} Cuffman's second assignment of error is, therefore, overruled.

## ASSIGNMENT OF ERROR NO. III

**THERE WAS INSUFFICIENT PROBATIVE ADMISSIBLE EVIDENCE TO PROVE THE CHARGE BEYOND A REASONABLE DOUBT.**

{¶28} In his third assignment of error, Cuffman argues that there was insufficient evidence[1] to support his conviction for possession of drugs since the mere presence of the heroin in his vicinity was insufficient to prove that he knowingly possessed it.

---

[1] Cuffman also argues that his conviction is against the manifest weight of the evidence under this assignment of error, however, he did not assert this as part of his assignment of error as required by App.Rs. 12 and 16, and so we decline to rule upon this argument.

**{¶29}** When reviewing the sufficiency of the evidence, "[t]he relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Jenks* (1981), 61 Ohio St.3d 259, 574 N.E.2d 492, paragraph two of the syllabus.

**{¶30}** Cuffman was convicted of drug possession in violation of R.C. 2925.11(A), which provides, "[n]o person shall knowingly obtain, possess, or use a controlled substance." "'Possess' or 'possession' means having control over a thing or substance, but may not be inferred solely from mere access to the thing or substance through ownership or occupation of the premises upon which the thing or substance is found." R.C. § 2925.01(K).

**{¶31}** Possession may be actual or constructive, however. *State v. Worley* (1976), 46 Ohio St.2d 316, 329, 348 N.E.2d 351. For constructive possession to exist, the State must demonstrate that the defendant: was able to exercise dominion or control over the item, even if he/she does not have immediate physical possession of it and was conscious of the object's presence. *State v. Hankerson* (1982), 70 Ohio St.2d 87, 91, 434 N.E.2d 1362; *State v. Messer* (1995), 107 Ohio App.3d 51, 56, 667 N.E.2d 1022. See, also, *State v. Cooper*, 3d Dist. No. 9-06-49, 2007-Ohio-4937, ¶25. The State may prove the existence of the

various elements of constructive possession of contraband by circumstantial evidence. *Jenks*, 61 Ohio St.3d at 272-73.

**{¶32}** "A defendant's mere presence in an area where drugs are located does not conclusively establish constructive possession." *Cooper*, at ¶26, citing *State v. Cola* (1991), 77 Ohio App.3d 448, 450, 602 N.E.2d 730; *Cincinnati v. McCartney* (1971), 30 Ohio App.2d 45, 48, 281 N.E.2d 855. On the other hand, "readily usable drugs found in very close proximity to a defendant may constitute circumstantial evidence and support a conclusion that the defendant had constructive possession of such drugs." *State v. Barr* (1993), 86 Ohio App.3d 227, 235, 620 N.E.2d 242, citing *State v. Pruitt* (1984), 18 Ohio App.3d 50, 480 N.E.2d 499. See, also, *State v. Stewart*, 3d Dist. No. 13-08-18, 2009-Ohio-3411, ¶51. "Mere presence in the vicinity of drugs, coupled with another factor probative of dominion or control over the contraband, may [also] establish constructive possession." *Cooper*, at ¶26, citing *State v. Fugate* (Oct. 2, 1998), 4th Dist. No. 97CA2546 and *State v. Rocker* (Sept. 1, 1998), 10th Dist. No. 97APA10-1341.

**{¶33}** At trial, Lieutenant Assenheimer, Officer Walker, and Officer Jager testified to the events leading up to Cuffman's arrest for possession of heroin. Their testimony at trial was substantially similar to their testimony at the suppression hearing, except that they testified that they encountered Cuffman around 9:36 p.m., not after 11:00 p.m., as they had testified to at the suppression

hearing. (Oct. 21, 2010 Tr. at 102, 129, 164). Assenheimer testified that the two aluminum foil balls he found at Cuffman's feet were tested and found to contain 0.33 grams of heroin, which was confirmed by testimony of an expert witness at trial as well. (Oct. 21, 2010 Tr. at 99-100, 137-39); (State's Ex. 2). He further testified that Officer Swalley located a third aluminum foil ball five to ten (5-10) feet away from Cuffman. (Id. at 97, 115). Officer Swaney testified that Cuffman told him that: he was at the known drug house to collect a $20 debt for Terry Rice, Jr.; he witnessed heroin on a table inside the house; he does not use heroin, so he left the house. (Id. at 192).

{¶34} After reviewing the entire record herein, we conclude that a rational trier of fact could have concluded that Cuffman possessed heroin. The jury was presented with more than merely evidence of Cuffman's presence near the area in which the drugs were located. Rather, the jury was presented with evidence that two of the foil balls containing heroin were found lying at Cuffman's feet; in other words, in "very close proximity" to Cuffman. *Barr*, 86 Ohio App.3d at 235, citing *Pruitt*, 18 Ohio App.3d 50; *Stewart*, 2009-Ohio-3411, at ¶51. Cuffman was the only person in very close proximity to the heroin besides the law enforcement officers. The jury also heard evidence that Cuffman was observed entering and leaving a known drug house after being there for no more than five (5) minutes—typical of a drug transaction—just minutes before he was found with the heroin.

The jury also heard evidence of Cuffman's nervous behavior during the stop; specifically, evidence that Cuffman would not remove his left hand from his pocket and later removed the contents of the pocket but tightly cupped the contents in his hand. The jury also heard testimony that the foil balls containing heroin were found after a physical struggle occurred between Cuffman and the officers. A rational juror could conclude that Cuffman lost control of the third aluminum foil ball of heroin, found five to ten (5-10) feet away from him on the sidewalk, during this struggle. In addition to this, Cuffman told Officer Swaney that he saw heroin in the house he was seen leaving but he left the house because he did not use heroin. Furthermore, when Officers Walker and Jager asked Cuffman if he had anything of concern in his pocket, Cuffman stated that he did not have any drugs, even though the officers never mentioned drugs during the conversation. All of this circumstantial evidence, along with the very close proximity of the drugs to Cuffman's person, could lead a rational trier of fact to conclude that Cuffman constructively possessed the heroin.

{¶35} Cuffman's third assignment of error is, therefore, overruled.

{¶36} As a final matter, since we have found that the trial court committed no error with respect to the assignments of error Cuffman raised concerning his conviction for possession of drugs in case no. 10CR0064, appellate case no. 3-11-

01, we also find no error in the trial court's decision to revoke Cuffman's community control in case no. 07CR0085, appellate case no. 3-11-02.

{¶37} Having found no error prejudicial to the appellant herein in the particulars assigned and argued, we affirm the judgments of the trial court.

*Judgments Affirmed*

**ROGERS, P.J. and WILLAMOWSKI, J., concur in Judgment Only as to Assignment of Error No. I.**

**/jlr**