[Cite as *State v. Meddock*, 2017-Ohio-4414.]

IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
PIKE COUNTY

| | | |
|---|---|---|
| STATE OF OHIO, | : | |
| | : | Case No. 16CA864 |
| Plaintiff-Appellee, | : | |
| | : | |
| vs. | : | DECISION AND JUDGMENT |
| | : | ENTRY |
| CHARLES J. MEDDOCK, | : | |
| | : | |
| Defendant-Appellant. | : | **Released: 06/15/17** |

_____

APPEARANCES:

Timothy Young, Ohio State Public Defender, and Francisco E. Lüttecke, Assistant Ohio State Public Defender, Columbus, Ohio, for Appellant.

Robert Junk, Pike County Prosecuting Attorney, Waverly, Ohio, for Appellee.

_____

McFarland, J.

{¶1} Charles J. Meddock appeals the sentence and judgment of the Pike County Court of Common Pleas after a jury found him guilty of one count of illegal manufacture of drugs, in violation of R.C. 2925.04(A), and one count of illegal assembly or possession of chemicals for the manufacture of drugs, in violation of R.C. 2925.041. On appeal, Appellant contends: (1) the trial court erred when it permitted improper opinion testimony; (2) the trial court erred by permitting irrelevant and prejudicial evidence regarding a prior encounter with law enforcement; (3) the trial court erred by overruling

Appellant's Crim.R. 29 motion; and (4) the trial court's cumulative errors violated Appellant's rights to a fair trial and due process. Upon review, we find no merit to Appellant's arguments. As such, the trial court did not err. Accordingly, we overrule Appellant's assignments of error and affirm the judgment of the trial court.

## FACTS

{¶2} On May 1, 2015, Appellant and Donald Entler, Appellant's codefendant, were indicted on one count of illegal manufacturing of drugs, a violation of R.C. 2925.04(A)(3) and a second degree felony, and one count of illegal assembly of one or more chemicals necessary for the manufacture of methamphetamine, a violation of R.C. 2925.041 and a third degree felony. The indictments arose from activities which occurred on or about April 5, 2015 in Pike County, Ohio. On that date, the Pike County Sheriff's office received an anonymous tip of an active methamphetamine lab in the Morgantown area of Pike County. Pike County deputies responding to the area caught a strong scent of ether coming eastbound across Morgan's Fork Road. The deputies eventually entered a house on 19 North Street owned by Robert Crabtree. Inside, officers discovered Appellant, Entler, and two women. Furthermore, officers discovered a one-pot methamphetamine lab in the second bedroom of the house where Appellant, alone, was hiding.

{¶3} Appellant entered not guilty pleas to the above charges and eventually proceeded to trial on January 4 and 5, 2016.  The State presented two witnesses, Corporal Adrian Cottrell and Corporal James Burchett, both of the Pike County Sheriff's Office.  The defense did not present any evidence.  At the close of trial, Appellant was convicted of both counts.  Appellant was sentenced on January 27, 2016.

{¶4} At sentencing, the trial court found the counts were allied offenses of similar import and should be merged for sentencing.  The prosecuting attorney elected to proceed upon the illegal manufacture count, R.C. 2925.04(A).  The trial court then imposed a mandatory prison term of four years.  This timely appeal followed.

ASSIGNMENTS OF ERROR

"I. THE TRIAL COURT ERRED WHEN IT PERMITTED OFFICER COTTRELL TO PROVIDE IMPROPER OPINION TESTIMONY, DENYING MR. MEDDOCK A FAIR TRIAL AND DUE PROCESS OF LAW.

II. THE TRIAL COURT ERRED WHEN IT ADMITTED IRRELEVANT AND PREJUDICIAL EVIDENCE, DENYING MR. MEDDOCK HIS RIGHTS TO DUE PROCESS AND A FAIR TRIAL.

III. THE TRIAL COURT VIOLATED MR. MEDDOCK'S RIGHTS TO DUE PROCESS AND A FAIR TRIAL WHEN, IN THE ABSENCE OF SUFFICIENT EVIDENCE, IT FAILED TO GRANT HIS CRIM.R. 29 MOTIONS AS TO THE ILLEGAL MANUFACTURING OF METHAMPHETAMINES, AND THE ILLEGAL ASSEMBLY

OR POSSESSION OF CHEMICALS FOR THE
MANUFACTURE OF DRUGS (METHAMPHETAMINES).

IV. THE TRIAL COURT VIOLATED MR. MEDDOCK'S
RIGHT TO DUE PROCESS AND A FAIR TRIAL
THROUGH CUMULATIVE ERROR."

ASSIGNMENTS OF ERROR ONE AND TWO

{¶5} Since the first two assignments of error both involve evidentiary matters, to be reviewed under the same abuse of discretion standard, we consider them jointly.

A.  STANDARD OF REVIEW

{¶6} The admission or exclusion of evidence generally rests within the trial court's sound discretion. *State v. Minton,* 4th Dist. Adams No. 15CA1006, 2016-Ohio-5427, ¶ 45; *State v. Green,* 184 Ohio App.3d 406, 2009-Ohio-5199, 921 N.E.2d 276, ¶ 14 (4th Dist.).  Thus, an appellate court will not disturb a trial court's ruling regarding the admissibility of evidence absent a clear showing of an abuse of discretion with attendant material prejudice to defendant. *Id.*  " 'A trial court abuses its discretion when it makes a decision that is unreasonable, unconscionable, or arbitrary.' " *State v. Williams*, 4th Dist. Jackson No. 15CA3, 2016-Ohio-733, ¶ 17, quoting *State v. Keenan,* 143 Ohio St.3d 397, 2015-Ohio-2484, 38 N.E.3d 870, ¶ 7, quoting *State v. Darmond,* 135 Ohio St.3d 343, 2013-Ohio-966, 986 N.E.2d 971, ¶ 34.

## B.  LEGAL ANALYSIS

### 1. Did Officer Cottrell give improper expert opinion testimony?

{¶7} Appellant argues the trial court abused its discretion when it permitted Officer Cottrell to offer his professional opinion that the materials found in the second bedroom where Appellant was hiding were ingredients for the production of methamphetamine and were being used to that end when the officers arrived.  Defense counsel repeatedly objected to Officer Cottrell's testimony.  Appellant argues that the trial court erred by permitting the officer to testify as an expert pursuant to Evid.R. 702 and pursuant to the principles gleaned from *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 113 S.Ct. 2786 (1993).[1]  However, since the officer was not previously disclosed as an expert and did not submit an expert report pursuant to Crim.R. 16, defense counsel was precluded from appropriate cross-examination.  Furthermore, Officer Cottrell's conclusions were the only link between the common household items and the alleged methamphetamine lab.  Appellant concludes Officer

---

[1] In *Daubert,* the United States Supreme Court discussed the question of when expert scientific testimony is relevant and reliable.  There the court was faced with the issue of whether certain scientific evidence was admissible in a birth defects case.  The *Daubert* court held, under Fed.R.Evid. 702, that expert scientific testimony is admissible if it is reliable and relevant to the task at hand. *Id.* at 589, 113 S.Ct. at 2795.  To determine reliability, the *Daubert* court stated that a court must assess whether the reasoning or methodology underlying the testimony is scientifically valid. *Id.* at 592-593, 113 S.Ct. at 2796.  In evaluating the reliability of scientific evidence, several factors are to be considered: (1) whether the theory or technique has been tested, (2) whether it has been subjected to peer review, (3) whether there is a known or potential rate of error, and (4) whether the methodology has gained general acceptance. *Id.* at 593-594, 113 S.Ct. at 2797.

Cottrell's testimony was well outside the limited circumstances in which lay witness opinion is proper under Evid.R. 701.

{¶8} Since the adoption of the Rules of Evidence, both on the state and federal levels, many courts have used an Evid.R. 701 analysis and have allowed lay witnesses to testify about, for example, the identity of a drug. *State v. Johnson,* 4th Dist. Gallia No. 2014-Ohio-4032, ¶ 38; *State v. McKee,* 91 Ohio St.3d 292, 2001-Ohio-41, 744 N.E.2d 737. Evid.R. 701 provides:

> "If the witness is not testifying as an expert, his testimony in the form of opinions or inferences is limited to those opinions or inferences which are (1) rationally based on the perception of the witness and (2) helpful to a clear understanding of his testimony or the determination of a fact in issue."

"[C]ourts have permitted lay witnesses to express their opinions in areas in which it would ordinarily be expected that an expert must be qualified under Evid.R. 702 * * *. Although these cases are of a technical nature in that they allow lay opinion testimony on a subject outside the realm of common knowledge, they will fall within the ambit of the rules requirement that a lay witness's opinion be rationally based on firsthand observations and helpful in determining a fact in issue. These cases are not based on specialized knowledge within the scope of Evid.R. 702, but rather are based upon a layperson's personal knowledge and experience." *Johnson, supra,* at ¶ 38.

{¶9} Other districts have considered this type of evidentiary challenge. In *State v. Frye,* 5th Dist. Stark No. 2006CA00363, 2007-Ohio-7111, the appellant asserted the trial court committed plain error in allowing expert testimony from a witness who was not qualified to present alleged expert testimony about methamphetamine labs. The appellate court cited the applicable standard of review as to evidentiary matters and later pointed out that because defense counsel did not move to exclude the alleged improper evidence, Frye had waived all but plain error. The appellate court explained the evidentiary rules at ¶ 29:

> "Opinion testimony must be considered in light of Evid.R. 701 and 702. The opinion must be based upon the perceptions of the witness and helpful to the trier of fact. Evid.R. 701. In the case of an expert opinion, it must relate to matters outside the knowledge, experience, training or education of the trier of fact, and be based upon reliable, scientific, technical or other specialized information. Evid.R. 702. Stated otherwise, 'For expert testimony to be admitted at trial, it must: 1) relate to matters beyond the knowledge or experience possessed by lay persons or dispel common misconceptions held by lay persons; 2) be based on reliable scientific, technical, or other specialized knowledge; 3) assist the trier of fact to understand the evidence or to determine a fact in issue; 4) be relevant and material to an issue in the case; and 5) have a probative value which outweighs any prejudicial impact. Evid.R. 702; *State v. Daws* (1994), 104 Ohio App.3d 448, 462, 662 N.E.2d 805.' *State v. Thompson,* (Sept. 23, 1997), Franklin App. No. 96APA12-1660."

{¶10} The *Frye* court observed at ¶ 30:

> "At trial, Ofc. Monigold testified as to his experience in investigating methamphetamine labs. Monigold stated he is a 'meth certified response personnel.' As part of that training, Monigold learned how to dismantle process labs, and became familiar with the process of making methamphetamine and conducting methamphetamine investigations. Monigold testified there are different ways to make methamphetamine, and described the four-step process commonly used. Although individual labs may utilize different chemicals, pseudoephedrine or eudoephedrine is the one necessary ingredient."

{¶11} The *Frye* court concluded that the trial court's admission of Ofc. Monigold's testimony did not constitute plain error.

> "Ofc. Monigold's testimony related to matters beyond the knowledge and experience of the jury; was based upon specialized knowledge and training; assisted the trier of fact in understanding the evidence and determining a fact in issue; was relevant and material; and had a probative value which outweighed any prejudicial impact. Accordingly, such testimony was properly admitted as expert testimony." *Id.* at ¶ 33.

{¶12} Similarly, in *State v. Cox*, 12th Dist. Clermont No. CA2008-03-028, 2009-Ohio-928, the appellant argued the trial court erred in permitting an agent to testify as to the manufacture of methamphetamine without being qualified as an expert witness. The appellate court was also limited to consideration of the argument under the plain error standard of review, and acknowledged that an alleged error does not constitute plain error unless, but for the error, the outcome of the trial clearly would have been otherwise. *Id.* at 13. *Gragg; McKee;* Crim.R. 52(B).

{¶13} The *Cox* court found its review of the record yielded no indication that the trial court committed plain error in violation of Evid.R. 701 by admitting the testimony of the agent.  The record demonstrated that [Agent Sorbello] testified as to his education, training, and experience in the field of identifying methamphetamine, including the production of methamphetamine.  He testified that he had completed 282 hours of special courses pertaining to the investigation, dismantling, and supervision of "clandestine drug laboratory operations," and had been involved in 500 cases involving methamphetamine. *Id.* at 46.

> "Ohio courts have previously held that "the experience and knowledge of a * * * lay witness can establish his * * * competence to express an opinion on the identity of a controlled substance if a foundation for this testimony is first established." *McKee* at syllabus; *Gragg* at ¶ 40-41, 878 N.E.2d 55."

{¶14} The appellate court found Agent Sorbello's testimony as to his education, training, and experience qualified him to testify in this case as to the production process of methamphetamine, including the quantity of methamphetamine that could be produced utilizing the pseudoephedrine discovered in the appellant's possession. *Id.* at 46.

{¶15} In *State v. Williams,* 9th Dist. Summit No. 25716, 2011-Ohio-6604, the appellant objected to a detective's testimony that "[w]ithout a doubt there was definitely a methamphetamine lab at [the] Beechwood

Circle [address]." However, the appellate court found that the detective did not need to be qualified as an expert under Evid.R. 702 because the statement constituted lay opinion testimony permitted by Evid.R. 701. After citing the rule, the appellate court found:

> "Detective Anderson's testimony was admissible as lay opinion because it met both of the requirements of Evid.R. 701: it was based on his personal observation of the items taken from the garbage outside the residence and found within the house, and it aided the jury's understanding of the significance of those items when found together. *See, e.g, State v. Drummond*, 111 Ohio St.3d 14, 2006-Ohio-5084, at ¶ 222 (summarizing situations in which a police officer's lay opinion testimony is proper when based on the perception of evidence at a crime scene)."

**{¶16}** In *Williams,* the appellant also asserted an ineffective assistance claim. Willams argued his counsel was ineffective in that he failed to object to the detective's testimony. The appellate court emphasized at ¶ 15:

> "[B]ecause Detective Anderson's testimony about methamphetamine production was proper under Evid.R. 701, there was no reason for counsel to object. When a police officer provides general testimony about the process of manufacturing methamphetamine that is based on personal observation, that testimony is "certainly helpful to the trier of fact in identifying the role of the ingredients in the process and the equipment necessary in production of methamphetamine." *State v. Harper,* 5th Dist. No. 07 CA 151, 2008-Ohio-6926, at ¶ 43. As such, it is lay witness testimony within the purview of Evid.R. 701. *Id.* at ¶ 37-43. Failure to object to such testimony on the part of defense counsel does not constitute ineffective assistance. *Id.* at ¶ 44.
>
> * * *

In this case, Officer Williams testified regarding the process used to manufacture methamphetamine and the materials commonly used in that process. His testimony provided the context for the jury to appreciate the significance of otherwise common household items found together in [Ms. Buck's] residence. It was well within the scope of Evid.R. 701* * *." *Id.* at ¶ 16.

{¶17} More recently in *State v. Maust,* 8th Dist. Cuyahoga No. 103182, 2016-Ohio-3171, Maust argued that the trial court abused its discretion in allowing Vedder, a firefighter, to offer expert testimony as to the methamphetamine process, despite not having complied with Crim.R. 16(K) by providing an expert report prior to trial and not being qualified under Evid.R. 702. The state countered that Vedder was not offered as an expert witness; nor did his testimony constitute expert testimony. The state maintained that Vedder was a fact witness, who testified to his observations and actions, such as taking photographs, and simply relayed the relevancy of his actions—all of which he was permitted to do under Evid.R. 701. The Eighth District Court of Appeals agreed.

{¶18} After defining Evid.R. 701, the court explained at ¶ 18:

"Under Evid.R. 701, courts have permitted lay witnesses to express their opinions in areas in which it would ordinarily be expected that an expert must be qualified under Evid.R. 702. *State v. Primeau*, 8th Dist. Cuyahoga No. 97901, 2012-Ohio-5172, ¶ 74, citing *State v. McKee,* 91 Ohio St.3d 292, 744 N.E.2d 737 (2001). Indeed, this court has consistently recognized that the testimony of a state's witness, who is not presented as an expert, is properly admitted under Evid.R. 701

when (1) the testimony is based on the witness's training or experience, (2) the testimony relates to the witness's personal observations with the investigation, and (3) the testimony is helpful to determine a fact at issue. *See, e.g., State v. Wilkinson,* 8th Dist. Cuyahoga No. 100859, 2014-Ohio-5791, ¶ 52-53; *Primeau* at ¶ 75; *State v. Cooper*, 8th Dist. Cuyahoga No. 86437, 2006-Ohio-817, ¶ 18."

{¶19} The Eighth District Court of Appeals also noted that appellate courts have similarly determined that "some testimony offered by officers/detectives is lay person witness testimony even though it is based on the officer/detective's specialized knowledge." *Id.* at 19, quoting *State v. Johnson*, 7th Dist. Jefferson No. 13JE5, 2014-Ohio-1226, ¶ 57 (Detective's testimony as to gang activity was permissible under Evid.R. 701 based on detective's personal knowledge and experience in the field.); *see also State v. McClain,* 6th Dist. Lucas No. L–10–1088, 2012-Ohio-5264, ¶ 13, and *State v. Williams, supra,* at ¶ 11.

{¶20} The *Maust* court concluded at ¶ 20:

"Our review of the record reveals that the state properly laid a foundation for Vedder's testimony and that his testimony was directly related to the actions that he personally undertook at the scene. Specifically, Vedder—apart from his 40 years as a firefighter with the Chagrin Falls Fire Department and 25 years as a hazardous materials specialist—testified as to his training and experience through the Ohio Fire Academy in methamphetamine labs. Further, Vedder also has served as an instructor for the Ohio Fire Academy, teaching specifically about methamphetamine labs and the chemicals that are involved, the precursor chemicals, and the hazards that are present from those chemicals. Therefore, Vedder's testimony

that salt and Coleman lantern fluid are used in the methamphetamine process as well as his explanation of the one-pot method for making methamphetamine was based on his own personal knowledge and experience as established by the state. Additionally, Vedder's testimony related specifically to his own actions on the scene and why he undertook such actions, i.e., photographing items that are used in the methamphetamine process. Further, Vedder's testimony was helpful to determine the significance of the items found in Maust's bedroom. Accordingly, we find no error in the state's failure to provide an expert report with respect to Vedder; nor did the trial court abuse its discretion in allowing him to testify on these matters."

{¶21} Here, we have reviewed the record and find that Corporal Cottrell's testimony was properly admitted lay testimony under Evid.R. 701 because the testimony was based on his training and experience, was related to his personal observations during the investigation, and was helpful to determination of facts in issue. The State laid a foundation for Cottrell's testimony. Cottrell testified he had completed basic peace officer training in 2011 and received his state certification. He was hired by the Pike County Sheriff's Department in January 2012. He had just been promoted to corporal. Corporal Cottrell's duties included supervising the deputies on his shift, reviewing reports, and correcting paperwork.

{¶22} Specifically, Corporal Cottrell had received Advanced Clandestine chemical lab training at the Bureau of Criminal Investigations in Columbus in 2014. The training lasted two weeks and he passed a written

test at the end. He was trained on the entire process of methamphetamine production, and the "one-pot method." He was also trained as to how to package the hazardous materials for disposal. He had investigated approximately 50 actual methamphetamine labs, and observed the "one-pot" cook labs during the course of his duties. Corporal Cottrell testified the "one-pot" method takes 30-60 minutes and some common ingredients are pseudoephedrine and drain opener.

{¶23} Corporal Cottrell's testimony also related to his personal observations at the house located on 19 North Street in the Morgantown area of Pike County. Cottrell testified after they received the tip and were en route to investigate, he caught the strong scent of ether coming eastbound across Morgan's Fork Road. He testified the smell of ether can be indicative of a methamphetamine lab. Based on the smell, he and other officers patrolled the area and determined the smell was coming from the house at 19 North Street owned by Robert Crabtree. Cottrell and another officer attempted to make contact at the house. Finally, the homeowner was found nearby and gave permission to enter the residence. Upon entering the house and going from room to room, Cottrell found 2 females. Donald Entler was hiding in the closet of a main bedroom. Appellant was hiding under the bed in a second bedroom.

{¶24} Here, Corporal Cottrell's testimony was helpful to the jury's understanding and determination of facts in issue. Cottrell testified in the second bedroom, on a dresser, there was a soda bottle with a tube coming out of the top. It was giving off gas at the end of the hose and fumes could be seen in the air. Cottrell testified he had seen many of these and had never seen a pop bottle with a hose coming out that was not connected to a methamphetamine lab. Based on his training, Cottrell identified this bottle as an acid gas generator, a part of the one-pot method of producing methamphetamine. Cottrell testified the generator is used to convert the oil form of methamphetamine into usable water dissolvent form.

{¶25} Cottrell testified he performed a field test of liquid found in a mason jar in bedroom two. The jar is used in the initial assembly of the one pot method. He opined it was flammable liquid. The acid gas generator is used in the second phase. Based on his training and experience with multiple clandestine meth labs, he opined the acid generator was assembled and to the point where the liquid was extracted.

{¶26} Corporal Cottrell also identified Exhibit 11, a photograph of a backpack on the floor inside bedroom 2. He testified a one-pot bottle, an open bag of ammonium nitrate, lye, and starting fluid were found inside the back pack.

{¶27} We find Corporal Cottrell's testimony regarding the one-pot method of methamphetamine production was properly admitted under Evid.R. 701. As in *Williams, supra,* Corporal Cottrell testified regarding the process used to manufacture methamphetamine and the materials commonly used for that process. His testimony was based on his training, certification, and experience of identification of clandestine methamphetamine labs. His testimony was also based upon his observations at the scene of Appellant's arrest in April 2015. And, as in *Williams,* his testimony provided the context for the jury to appreciate the significance of otherwise common household items found together in the house, and specifically the bedroom where Appellant was hiding.

{¶28} We find Corporal Cottrell's testimony was proper lay opinion well within the providence of Evid.R. 601. Accordingly, we find the trial court did not abuse its discretion in allowing Corporal Cottrell's testimony regarding clandestine methamphetamine labs and his observations upon arriving at 19 North Street. As such, we find no merit to Appellant's first assignment of error and it is hereby overruled.

2. Did Officer Cottrell give improper and prejudicial testimony about the marijuana pipe?

{¶29} In Appellant's second assignment of error, he first contends the

jury heard unrelated and prejudicial testimony about a marijuana pipe found in the second bedroom. The jury heard evidence that Appellant smoked marijuana, and a photograph of the marijuana pipe was admitted. The only evidence linking Appellant to the second bedroom was the marijuana pipe. Counsel argues the irrelevant material was prejudicial character evidence. Counsel concludes that since there was no overwhelming evidence of guilt, the photograph of the pipe, along with other matters to be discussed below, was overly prejudicial.

{¶30} The State responds that the photograph of the marijuana pipe was properly admitted because it was relevant evidence used to make the existence of a fact of consequence to the determination of the action more probable than it would be without the evidence. Appellant claimed he was only in the room to hide from law enforcement. However, the marijuana pipe establishes a link between Appellant and the second bedroom.

{¶31} The trial transcript reveals that the State asked Corporal Cottrell to identify Exhibits 17, 18, and 19, which he identified as "just basically a homemade marijuana pipe that was located in the bedroom, as well." While counsel interposed an objection shortly thereafter to a photograph of the acid generator on top of the dresser in bedroom 2, there was no objection to the photograph of the marijuana pipe until the close of trial. Later, in Corporal

Burchett's testimony, a DVD of his recorded interview with Appellant was

played for the jury.  In the DVD, Appellant was questioned as to whether he

smoked pot.  While his verbal answer is inaudible, Appellant can be seen

shaking his head affirmatively.  Counsel did not interpose an objection as to

the playing of the DVD.

{¶32} When defense counsel objected to the admission of the

marijuana pipe photographs at the close of trial, counsel argued Appellant

was not charged with possession of drug paraphernalia and the photograph

was confusing and prejudicial.  The court overruled the objection as to

Exhibit 17 and sustained objections to Exhibits 18 and 19 as "surplusage."

Counsel did not object to admission of the DVD.

{¶33} In *State v. Rotarius,* 8th Dist. Cuyahoga No. 2002-Ohio-666,

the appellate court discussed the admissibility of "other acts" evidence at

trial.  Evid.R. 404(B), dealing with the admissibility of "other acts," states:

> "Evidence of other crimes, wrongs or acts is not admissible to
> prove the character of a person in order to show that he acted in
> conformity therewith.  It may, however, be admissible for other
> purposes, such as proof of motive, opportunity, intent,
> preparation, plan, knowledge, identity, or absence of mistake or
> accident.

{¶34} R.C. 2945.59, dealing with the admission of "other acts" in the

context of a criminal trial, provides:

"In any criminal case in which the defendant's motive or intent, the absence of mistake or accident on his part, or the defendant's scheme, plan, or system in doing an act is material, any acts of the defendant which tend to show his motive or intent, the absence of mistake or accident on his part, or the defendant's scheme, plan, or system in doing the act in question may be proved, whether they are contemporaneous with or prior or subsequent thereto, notwithstanding that such proof may show or tend to show the commission of another crime by the defendant."

"If the other act does in fact 'tend to show' by substantial proof any of those things enumerated, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity or absence of mistake or accident, then evidence of the other act may be admissible." *Rotarius, supra,* at ¶ 15.

{¶35} Courts, while strictly construing Evid.R. 404(B) and R.C. 2945.59, and resolving doubts against admissibility, have applied the above rules in such a way as to attempt to minimize the amount of prejudice the admission of evidence of prior conduct will have on the disposition of the current charges faced by an accused.  "It is a well established rule that in a criminal trial evidence of previous or subsequent criminal acts, wholly independent of the offense for which a defendant is on trial, is inadmissible" to prove that a defendant has an undesirable trait, disposition or propensity toward the commission of a certain type of crime. *Id.*  "Further, [the Ohio Supreme Court] has stated that, 'evidence of other acts of a defendant is admissible only when it "tends to show" one of the matters enumerated in

the statute and only when it is relevant to proof of the guilt of the defendant

of the offense in question." ' *Id.* at 18.

**{¶36}** Rotarious was convicted of possession of marijuana and

possession of drugs for sale.  Some of the evidence used against him was his

travel history, the hotel room he reserved where a large amount of marijuana

was found, and his wallet and other identifiers in the hotel room.  On appeal,

Rotarius complained that a Drug Enforcement Administration agent was

allowed to testify about finding a glass pipe in a bag with Rotarius' name tag

in the hotel room, and that the pipe tested positive for the presence of

methamphetamine.  Rotarius claimed that this evidence tended to show

general bad character that tainted the decision-making ability of the jury by

prejudicially depicting him as a person with a propensity for drugs and drug-

related crime.

**{¶37}** Rotarius objected to the admission of this testimony against the

backdrop of his own argument at trial, that others may have had access to his

hotel room, with his permission, and that any contraband recovered from the

room was placed there upon the initiative of someone else, without his

knowledge or consent.  The appellate court disagreed.  The court found, in

light of the complete trial record and the extremely limited amount of

testimony that this assigned error referenced (a total of two questions), the

argument was not well taken. The court found any prejudice, in light of the compelling, obvious evidence presented against Rotarius, such as his personal identification in the hotel room, his flights and travel history, and the testimony of his co-defendant Richardson, was de minimus.

{¶38} We find this to be a closer case than that presented by the facts in *Rotarius.* The court in *Rotarius* had other compelling evidence to consider. Here, ostensibly, Appellant's only connection to the room he was hiding in is the marijuana pipe. However, given Appellant's admission that he used marijuana, and given the failure to object to the playing or admission of the DVD, we find the photograph of the marijuana pipe was admissible because it did tend to show a substantial connection to the second bedroom and the absence of any mistake that Appellant was found there. For the foregoing reasons, we find no merit to Appellant's argument that unfair prejudice outweighed the photograph's probative value.

3. Did Corporal Cottrell give improper and prejudicial testimony regarding a prior encounter with Appellant?

{¶39} During direct examination, Corporal Cottrell testified regarding State's Exhibit 12, a photograph. He testified: "This is the bed inside the bedroom. Just another view of it. The mask is laying there. Uh, there's a leather jacket, uh, the knives. Uh, the last time I dealt with the Defendant, he had a knife." Defense counsel objected, moved to strike the testimony,

and moved for a mistrial. Counsel argued the prior encounter testimony was highly inflammatory and prejudicial. The State argued that it would present testimony that Appellant had been removed from the exact same room previously and under Evid.R. 404(B), the State would show there was no mistake. Defense counsel stated that information had not been provided to her. The trial court ultimately overruled the motion for a mistrial and sustained the objection. When the jury was brought back in, the trial court instructed:

> "Uh, there was an objection registered and a motion for mistrial in the presence of the jury just before you were asked to uh,- and a motion to strike- just before we went on recess, ladies and gentlemen. The court is sustaining the objection to the last statement of the officer and ordering it striken. The jury will disregard that last statement just made uh, prior to the defense counsel's uh objection and motion to strike. The jury will disregard that, not consider that statement for any purpose."

{¶40} Appellant contends the testimony regarding a "prior encounter with a knife" was unfairly prejudicial and the trial court's instruction could not have cured the damage. The State argues that the knife and previous encounter had nothing to do with any of the offenses charged and would have had no bearing on the jury.

{¶41} The First District Court of Appeals considered a similar scenario and the "other acts" analysis, in *State v. Dorsey*, 1st Dist. Hamilton No. C-110623, 2012-Ohio-4043. Dorsey appealed a misdemeanor

conviction for possession of criminal tools. Dorsey argued that the trial court erred by admitting the investigator's testimony involving other acts that occurred in the summer of 2010. Dorsey argued the testimony was neither probative of his intent on October 27, 2010, nor was it admitted for any purpose other than an attempt to show Dorsey's general propensity to commit crimes, a purpose specifically prohibited by Evid.R. 404(A) and R.C. 2945.59.

{¶42} The appellate court observed that the only witness at trial, an investigator, testified that in many of the automobile thefts that he had investigated through the years, a screwdriver had been shoved into the stripped steering column and used as the key, and a hammer had been found on the floor board. Further, the investigator also testified, over Dorsey's objection, that he had had contact with Dorsey sometime in the summer of 2010, when he had "charged" him with receiving stolen property for being in a stolen automobile with a stripped steering column. The officer admitted on cross-examination that he had not observed Dorsey breaking into an automobile on October 27, 2010, that he was not aware that an automobile theft had been attempted or had occurred on that date, and that he had never known anyone to use a screwdriver or hammer to steal food from a store shelf.

{¶43} The appellate court observed that evidence of other acts, crimes, or wrongs is not admissible to prove the character of a person to show acts in conformity on a particular occasion, but it may be admissible for other purposes, such as those listed in Evid.R. 404(B) and R.C. 2945.59. *Id.* at ¶ 12. *See* Evid.R. 404(A) and (B); *State v. Griffin,* 142 Ohio App.3d 65, 71-72, 753 N.E.2d 967 (1st Dist.2001). Other bad acts may be admissible "to establish circumstantially either an element of the crime or a material fact at issue." *Dorsey, supra,* quoting *Griffin* at 71, 753 N.E.2d 967.

{¶44} The *Dorsey* court recognized, however, a trial court must strictly construe this evidence against admissibility. *Id.* at 13. *See State v. DeMarco,* 31 Ohio St.3d 191, 194, 509 N.E.2d 1256 (1987). The other-act evidence must also meet the other requirements of admissibility set forth in the rules of evidence. *See* Evid.R. 403; Evid.R. 402. Applying the abuse of discretion standard, the Dorsey court observed the Supreme Court of Ohio defined an "unreasonable" decision as one that is not supported by a "sound reasoning process." *AAAA Enterprises, Inc. v. River Place Community Urban Redev. Corp.,* 50 Ohio St.3d 157, 161, 553 N.E.2d 597 (1990), cited in *Morris,* at ¶ 14.

{¶45} At Dorsey's trial, the state argued that the other-acts testimony was probative of Dorsey's intent to use the hammer and screwdrivers for a

criminal purpose—an element of the offense of possessing criminal tools—and, therefore, admissible as an exception set forth in Evid.R. 404(B). The trial court implicitly agreed and admitted the evidence over Dorsey's objection. However, the appellate court found the challenged testimony was not probative of the statutory inference set forth in R.C. 2923.24(B)(3), because it did not demonstrate the circumstances under which Dorsey possessed the hammer and screwdrivers in late October 2010. *Id.* at 17.

{¶46} Further, the testimony involved Dorsey's mere presence in a stolen automobile with a stripped steering column one-to-four months before the investigator found him in possession of the hammer and screwdrivers. Dorsey was not "charged" with automobile theft at that time and there was no testimony that anyone, including Dorsey, had used a screwdriver or hammer to steal that automobile. At best, the State's theory of relevance involved an impermissible inference upon an inference. *Dorsey, supra,* at 18; *See State v. Cowans,* 87 Ohio St.3d 68, 78–79, 717 N.E.2d 298 (1999). As such, it was not admissible to demonstrate Dorsey's intent or for any of the purposes recognized in Evid.R. 404(B), especially without any nexus between those facts and Dorsey's possession of the articles in late October 2010. The Dorsey court concluded there was no sound reasoning process to support the trial court's admission of the investigator's testimony.

Therefore, the court's decision to admit the challenged testimony was unreasonable and an abuse of discretion.[2]

{¶47} In this case, we agree with Appellant that the vague description of a "prior encounter with a knife" was not probative of his intent on April 5, 2015 and its elicitation was more than likely an attempt to show his general propensity to commit crime.  As such, the testimony is forbidden by Evid.R. 404(A) and R.C. 2945.59.  However, as in *Rotarius, supra,* we note shortly after defense counsel objected and the court removed the jury and conducted a bench conference, the trial court issued a limiting instruction that the statement regarding the prior encounter was to be disregarded.  Furthermore, during the closing instructions, the trial court reiterated that statements or answers stricken by the court or which they were instructed to disregard were not evidence and must be treated as though they had not been heard.

{¶48} "A jury is presumed to follow the instructions, including curative instructions, given it by a trial judge." *State v. Plott,* 3rd Dist. Seneca Nos. 13-15-39, 13-15-40, 2017-Ohio-38, ¶ 122, quoting *State v. Garner,* 74 Ohio St.3d 49, 59, 656 N.E.2d 623 (1995).  In Appellant's case,

---

[2] *See, e.g., State v. Huff*, 145 Ohio App.3d 555, 566, 763 N.E.2d 695 (1st Dist.2001); *State v. Zamorski,* 141 Ohio App.3d 521, 525, 752 N.E.2d 288 (1st Dist.2000); *State v. Echols*, App.3d 728, (1st Dist.1998); *Eckert v. Jacobs,* 1st Dist. No. C910445, 1992 Ohio App. LEXIS 5920, 1992 WL 355448, 128 Ohio App.3d 677, 698–699.

the trial court instructed the jury twice to disregard testimony which was stricken from the record. In the absence of any indication to the contrary, we presume the jury followed the court's instructions. As such, we find no merit to Appellant's argument. Based on the foregoing, we overrule Appellant's second assignment of error.

## ASSIGNMENT OF ERROR THREE

{¶49} Appellant argues the trial court erred when it denied his motions for acquittal for the charges of illegal manufacture of methamphetamine and illegal assembly or possession of chemicals necessary for manufacture of methamphetamine. He argues the evidence is insufficient to demonstrate that Appellant was the individual responsible for the methamphetamine lab in question. Specifically he argues the evidence that he was hiding in the second bedroom fails to establish any connection between his presence and knowing participation in illegal activity. However, the State contends that the evidence demonstrates that none of the items consistent with the manufacture of methamphetamine were found in any area of the house besides bedroom two, where Appellant was hiding and fumes and gases were being actively omitted pursuant to the one-pot lab. The State asserts any rational trier of fact could have found each element, including "knowledge" proven beyond a reasonable doubt.

## A. STANDARD OF REVIEW

{¶50} Under Crim.R. 29(A), "[t]he court on motion of a defendant * * *, after the evidence on either side is closed, shall order the entry of acquittal * * *, if the evidence is insufficient to sustain a conviction of such offense or offenses." *State v. Wright,* 4th Dist. Athens No. 15CA31, 2016-Ohio-7654, ¶ 21. "A motion for acquittal under Crim.R. 29(A) is governed by the same standard as the one for determining whether a verdict is supported by sufficient evidence." *Id.* quoting *State v. Tenace,* 109 Ohio St.3d 255, 2006-Ohio-2417, 847 N.E.2d 386, ¶ 37; *State v. Husted,* 2014-Ohio-4978, 23 N.E.3d 253, ¶ 10 (4th Dist.). "When a court reviews a record for sufficiency, '[t]he relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.' " *Id.* at 22, quoting *State v. Maxwell,* 139 Ohio St.3d 12, 2014-Ohio-1019, 9 N.E.3d 930, ¶ 146, quoting *State v. Jenks,* 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus; *Jackson v. Virginia,* 443 U.S. 307, 99 S.Ct. 2781 (1979). In making its ruling a court does not weigh the evidence but simply determines whether the evidence, if believed, is adequate to support a conviction. In other words, the motion does not test the rational persuasiveness of the state's case, but merely its legal adequacy.

*State v. Reyes–Rosales,* 4th Dist. Adams No. 15CA1010, 2016-Ohio-3338,

¶ 15.

## B.  LEGAL ANALYSIS

**{¶51}** Appellant was convicted of R.C. 2925.04, illegal manufacture,

which states:

> "(A) No person shall knowingly cultivate marihuana or knowingly manufacture or otherwise engage in any part of the production of a controlled substance."

**{¶52}** He was also convicted of R.C. 2925.041, illegal assembly or

possession of chemicals for manufacture of drugs, which provides:

> "(A) No person shall knowingly assemble or possess one or more chemicals that may be used to manufacture a controlled substance in schedule I or II with the intent to manufacture a controlled substance in schedule I or II in violation of section 2925.04 of the Revised Code."

**{¶53}** Furthermore, R.C. 2925.041(B) provides:

> "In a prosecution under this section, it is not necessary to allege or prove that the offender assembled or possessed all chemicals necessary to manufacture a controlled substance in schedule I or II. The assembly or possession of a single chemical that may be used in the manufacture of a controlled substance in schedule I or II, with the intent to manufacture a controlled substance in either schedule, is sufficient to violate this section."

**{¶54}** The evidence against Appellant is entirely circumstantial and

we begin by recognizing that it is well-established, however, that "a

defendant may be convicted solely on the basis of circumstantial evidence.

*Wickersham, supra,* ¶ 39, quoting *State v. Nicely,* 39 Ohio St.3d 147, 151, 529 N.E.2d 1236 (1988). "Circumstantial evidence and direct evidence inherently possess the same probating value." *Jenks*, paragraph one of the syllabus. "Circumstantial evidence is defined as '[t]estimony not based on actual personal knowledge or observation of the facts in controversy, but of other facts from which deductions are drawn, showing indirectly the facts sought to be proved. * * *' " *Nicely*, 39 Ohio St.3d at 150, quoting Black's Law Dictionary (5 Ed.1979) 221.

{¶55} " '[P]ossession' is defined as 'having control over a thing or substance, but may not be inferred solely from mere access to the thing or substance through ownership or occupation of the premises upon which the thing or substance is found.' " *Wickersham, supra*, at 10, quoting *State v. Gavin,* 4th Dist. Scioto No. 13CA3592, 2015-Ohio-2996 ¶ 35; citing R.C. 2925.01(K). "Possession may be actual or constructive." *Gavin;* quoting *State v. Moon*, 4th Dist. Adams No. 08CA875, 2009-Ohio-4830, ¶ 19; citing *State v. Butler,* 42 Ohio St.3d 174, 175, 538 N.E.2d 98 (1989) ("[t]o constitute possession, it is sufficient that the defendant has constructive possession").

{¶56} " 'Actual possession exists when the circumstances indicate that an individual has or had an item within his immediate physical

possession.' " *Wickersham, supra,* at 11, quoting *Gavin* at ¶ 36; *State v.*

*Kingsland,* 177 Ohio App.3d 655, 2008-Ohio-4148, 895 N.E.2d 633, ¶ 13

(4th Dist.; quoting *State v. Fry*, 4th Dist. Jackson No. 03CA26, 2004-Ohio-

5747, ¶ 39.  "Constructive possession exists when an individual knowingly

exercises dominion and control over an object, even though that object may

not be within his immediate physical possession." *Gavin, supra*; quoting

*State v. Hankerson,* 70 Ohio St.2d 87, 434 N.E.2d 1362, syllabus (1982);

*State v. Brown,* 4th Dist. Athens No. 09CA3, 2009-Ohio-5390, ¶ 19.  For

constructive possession to exist, the State must show that the defendant was

conscious of the object's presence. *Gavin, supra*; *Hankerson* at 91;

*Kingsland* at ¶ 13.  Both dominion and control, and whether a person was

conscious of the object's presence, may be established through

circumstantial evidence. *Gavin, supra; Brown* at ¶ 19.  "Moreover, two or

more persons may have joint constructive possession of the same object." *Id.*

{¶57} By the end of Appellant's trial, the jury had heard the following

evidence:

> 1) Corporal Cottrell found Appellant and 3 others in the 19
> North Street residence, in the presence of the strong smell of
> ether.

> 2) Appellant was found to have an outstanding warrant and was
> found hiding under the bed in a second bedroom, where no
> other person was located.

3) In the second bedroom on a dresser, there was a soda bottle with a tube coming out of the top, an acid gas generator emitting fumes, State's Exhibit 7. Based on his training, Cottrell identified this as the second part of the one-pot method of producing methamphetamine.

3) Cottrell identified Exhibit 9, the closet of bedroom two. He identified Exhibit 10, a mason jar of liquid inside the cabinet inside bedroom two. The jar would be used in the initial assembly of the one-pot method. Cottrell tested the liquid on the scene and determined it was flammable.

4) Cottrell identified Exhibit 11, a backpack lying on the ground inside the second bedroom. A one-pot bottle, an open bag of ammonium nitrate, lye and starting fluid were inside the backpack. Cottrell identified Exhibits 13 and 14, the one-pot bottle out of the backpack.

5) Cottrell also identified the following:

>   -State's Exhibit 1, drain opener and salt used in the acid generator;
>
>   -State's Exhibit 4, aluminum foil used to produce the hydrochloric gas or also used to help smoke methamphetamine;
>
>   -State's Exhibits 15 and 16, ammonium nitrate, a key ingredient for the one-pot method, from an opened cold pack;
>
>   -State's Exhibit 27, coffee filters used to filter final product, on top of the dresser in bedroom two;
>
>   -State's Exhibit 17, the homemade marijuana pipe; and,
>
>   -State's Exhibits 30 and 31, sodium chloride, cleansing water used to clean syringes. Cottrell testified methamphetamine can be inhaled, administered with a syringe, or taken orally.

6) Corporal James Burchett of the Pike County Sheriff's Office corroborated Corporal Cottrell's testimony about the anonymous tip and the smell of ether outside of Robert Crabtree's home.

7) Corporal Burchett identified Appellant and State's Exhibit 32, a DVD he recorded of his interview with Appellant. During the interview, Appellant acknowledged that he knew he had warrants and that he smokes pot. He denied using methamphetamine or knowing who was manufacturing methamphetamine in the house.

**{¶58}** After reviewing the record, and viewing the evidence in a light most favorable to the prosecution, we find any rational trier of fact could have found the essential elements of the counts against Appellant proven beyond a reasonable doubt. Appellant has argued that there was insufficient evidence to prove his knowing involvement with the methamphetamine lab found on the premises. "A person acts knowingly, regardless of his purpose, when he is aware that his conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when he is aware that such circumstances probably exist." *State v. Evans-Goode,* 4th Dist. Meigs No. 15CA10, 2016-Ohio-5361, ¶ 8; R.C. 2901.22(B). "[W]hether a person acts knowingly can only be determined, absent a defendant's admission, from all the surrounding facts and circumstances * * *." *Garner,* 74 Ohio St.3d 49, 60, 656 N.E.2d 623 (1995), quoting *State v. Huff,* 145 Ohio App.3d 555, 563, 763 N.E.2d 695 (1st

Dist.2001). Furthermore, regarding circumstantial evidence of intent, it has

been stated:

> "Intent lies within the privacy of an individual's own thoughts
> and is not susceptible of objective proof." *Wickersham, supra,*
> at ¶ 30, quoting *State v. Garner,* 74 Ohio St.3d 49, 60, 656
> N.E.2d 623 (1995). So "intent 'can never be proved by the
> direct testimony of a third person.' " *State v. Moon,* 4th Dist.
> Adams App. No. 08CA875, 2009-Ohio-4830, ¶ 20, quoting
> *State v. Lott,* 51 Ohio St.3d 160, 168, 555 N.E.2d 293 (1990).
> Rather it " 'must * * * be inferred from the act itself and the
> surrounding circumstances, including the acts and statements of
> the defendant surrounding the time of the offense.' " *Id.,*
> quoting *State v. Wilson,* 12th Dist. Warren No. CA2006–01–
> 007, 2007-Ohio-2298, ¶ 41.

**{¶59}** In *State v. Cuffman*, 3rd Dist. Crawford Nos. 3-11-01, 3-11-02,

2011-Ohio-4324, the appellate court observed: "A defendant's mere

presence in an area where drugs are located does not conclusively establish

constructive possession." *Id.* at 32, quoting *Cooper,* at ¶ 26, citing *State v.*

*Cola*, 77 Ohio App.3d 448, 450, 602 N.E.2d 730 (11th Dist.1991);

*Cincinnati v. McCartney*, 30 Ohio App.2d 45, 48, 281 N.E.2d 855 (1st

Dist.1971). On the other hand, "readily usable drugs found in very close

proximity to a defendant may constitute circumstantial evidence and support

a conclusion that the defendant had constructive possession of such drugs."

*Cuffman, supra,* quoting *State v. Barr*, 86 Ohio App.3d 227, 235, 620

N.E.2d 242 (8th Dist.1993), citing *State v. Pruitt*, 18 Ohio App.3d 50, 480

N.E.2d 499 (8th Dist. 1984). *See also State v. Stewart,* 3rd Dist. No. 13–08–18, 2009-Ohio-3411, ¶ 51.

{¶60} At Cuffman's trial for possession of heroin, three officers testified to the events leading up to Cuffman's arrest. One officer testified that the two aluminum foil balls he found at Cuffman's feet were tested and found to contain 0.33 grams of heroin. He further testified that another officer located a third aluminum foil ball five to ten feet away from Cuffman. Cuffman denied using heroin. The appellate court concluded that a rational trier of fact could have concluded that Cuffman possessed heroin. Cuffman was the only person in very close proximity to the heroin besides the law enforcement officers.[3]

{¶61} In *State v. Weckner,* 12th Dist. Brown No. CA2001-06-009, 2002-Ohio-1012, Weckner was one of four individuals in a car that's search revealed a plastic gas can, coffee filters, drain cleaner, plastic bottle with a hose taped to it, glass mason jars with substances in them, rubber gloves,

---

[3] However, in this case, the jury was presented with more than evidence of Cuffman's presence near the area in which the drugs were located. The jury was presented with evidence that two of the foil balls containing heroin were found lying at Cuffman's feet; in other words, in "very close proximity" to Cuffman. *Barr,* 86 Ohio App.3d at 235, citing *Pruitt*, 18 Ohio App.3d 50; *Stewart,* 2009-Ohio-3411, at ¶ 51. The jury also heard testimony that the foil balls containing heroin were found after a physical struggle occurred between Cuffman and the officers. The jury also heard evidence that Cuffman was observed entering and leaving a known drug house after being there for no more than five minutes—typical of a drug transaction—just minutes before he was found with the heroin. The jury also heard evidence of Cuffman's nervous behavior during the stop; specifically, evidence that Cuffman would not remove his left hand from his pocket and later removed the contents of the pocket but tightly cupped the contents in his hand. All of this circumstantial evidence, along with the very close proximity of the drugs to Cuffman's person, could lead a rational trier of fact to conclude that Cuffman constructively possessed the heroin.

batteries, starter fluid, Drain-o, salt and a plastic milk crate filled with mason jars. The items were suspected to be a portable methamphetamine lab. No one in the vehicle acknowledged ownership of the items.

{¶62} After an investigation, Weckner was arrested and charged with one count of aggravated possession of methamphetamines in violation of R.C. 2925.11(A) and one count of manufacturing methamphetamines in violation of R.C. 2925.04(A). Weckner was later convicted of both counts. On appeal, Weckner argued (1) his convictions were against the manifest weight of the evidence, (2) that the State did not prove that he had possession of the drugs or that he was involved in the manufacture of the methamphetamine, and (3) that no evidence linked him to the drugs or the lab components that were found.

{¶63} The *Weckner* court, as did the *Cuffman* court, cited *Pruitt*, 480 N.E.2d 499, for the principle that "[R]eadily usable drugs in close proximity of an accused may constitute sufficient and direct circumstantial evidence to support a finding of constructive possession." *See also Hamilton v. Barnett* (Aug. 3, 1998), Butler App. No. CA97-11-222, unreported. The appellate court also noted the same reasoning applies to the discovery of other contraband in close proximity to the defendant. *State v. Williams* (Dec. 7, 2000), Cuyahoga App. No. 76816, unreported. The appellate court noted the

evidence before the jury included the fact that Weckner was a passenger in a vehicle that contained the ingredients and tools necessary to manufacture methamphetamines. In addition, inside the vehicle were several mason jars containing methamphetamines in varying stages of manufacture, including some jars containing a completed product.[4] The appellate court found the jury did not lose its way by finding appellant guilty of both possession and manufacture of methamphetamines.

{¶64} In *State v. Isaac,* 5th Dist. Richland No. 15CA87, 2016-Ohio-7376, the defendant maintained the State had failed to prove the culpable mental state of "knowingly" in two counts of illegal manufacture of methamphetamine and illegal assembly or possession. Isaac, who was temporarily staying with a friend while experiencing marital problems, asserted she had no knowledge of the methamphetamine lab in the basement of her friends' residence. Isaac maintained the State did not demonstrate her knowledge of the methamphetamine lab or the possession of chemicals in the basement. The appellate court disagreed, holding at ¶ 57:

> "Viewing the evidence in a light most favorable to the prosecution, we find a rational trier of fact could have found the essential elements of the charges proven beyond a reasonable doubt. * * * Testimony of [her friend's husband] at trial

---

[4] Furthermore, at Weckner's trial, testimony revealed that this vehicle was seen near Weckner's residence on several occasions. Testimony also revealed Weckner's comments evidencing an awareness of the contents of the vehicle.

established [Isaac] used the basement in the home, including doing laundry there. Items consistent with the manufacture of methamphetamine were discovered in the basement. The liquid from the one-pot cook method taken from the home subsequently tested positive for methamphetamine. Viewing the evidence in a light most favorable to the prosecution, we find a rational trier of fact could find beyond a reasonable doubt Appellant knew about and participated in the manufacture of methamphetamine and possessed chemicals necessary for the manufacture of methamphetamine * * *." *Id.* at 58.[5]

{¶65} In *State v. Seldon*, 8th Dist. Cuyahoga No. 98429, 2013-Ohio-819, wherein the appellate court reversed Seldon's conviction for assembly or possession of chemicals used to manufacture methamphetamine, the court observed at ¶ 24:

"In cases throughout Ohio where convictions for Assembly or Possession of Chemicals used to Manufacture Controlled Substance were upheld, the state produced evidence from which a jury could conclude beyond a reasonable doubt that the requisite intent to manufacture existed. * * * Such evidence included the following: * * * the defendant, in addition to chemicals, possessed the actual physical equipment needed to manufacture methamphetamine, such as beakers, filters, tubing, electrical tape, copper fittings, a heat source, etc., *State v. Throckmorton,* 4th Dist. No. 08CA17, 2009-Ohio-5344, reversed on other grounds * * *."

{¶66} We acknowledge the previously-referenced cases, wherein similar convictions were affirmed, involved fact patterns in which additional corroborative evidence was submitted to the juries. Here, Appellant was

---

[5] In addition, testimony at trial established [Isaac] had a prior history of purchasing a significant quantity of pseudoephedrine, including a recent attempted purchase with [her codefendant] with whom she was residing on August 12, 2014. Specifically, [Isaac] purchased an inordinate amount of pseudoephedrine in the months prior to August 12, 2014.

discovered alone in bedroom two in close proximity to an acid gas generator on a dresser, a mason jar with flammable liquid on a shelf in the bedroom two closet, and a one-pot bottle in a backpack on the floor. The acid gas generator was actively giving off fumes, hydrogen chloride gas.

{¶67} Corporal Cottrell testified the acid generator was assembled and was reacted to the point where the hydrogen chloride gas would be administered to the liquid of the one-pot once the liquid was extracted. Various other necessary ingredients were found in bedroom two, including drain opener, ammonium nitrate, starting fluid, salt, coffee filters. A marijuana pipe, another item of contraband, was found on the bed in bedroom two. Appellant acknowledged marijuana use.

{¶68} While we cannot say the evidence against Appellant is overwhelming, he was found in close proximity to an active one-pot methamphetamine lab. The acid gas generator, with the hose and fumes, is the physical equipment, as noted in *Throckmorton,* needed to manufacture methamphetamine. And, he was found in the presence of other items, as in *Isaac* and *Weckner,* consistent with the manufacture of methamphetamine. The marijuana pipe, an entirely separate item of contraband, connects him to the second bedroom.

{¶69} "[P]ersons are presumed to have intended the natural,
reasonable and probable consequences of their voluntary acts." *Wickersham,*
*supra*, quoting *Garner* at 60.  Construing the evidence in favor of the
prosecution, we find any rational trier of fact could find Appellant
knowingly possessed the necessary chemicals and intended to manufacture
methamphetamine in the room in which he was located with a one-pot lab
actively giving off fumes.  As such, we find the trial court did not err by
overruling Appellant's Crim.R. 29 motion for acquittal.  We hereby overrule
the third assignment of error.

## ASSIGNMENT OF ERROR FOUR

{¶70} Appellant argues the three flaws which occurred in his trial,
highlighted above, are serious enough to make his case the rare one which
qualifies for reversal based on cumulative error.  Appellee responds that the
trial court did not commit a single error, let alone multiple instances of
harmless error.  As such Appellee concludes Appellant's convictions do not
warrant reversal.

## A.  STANDARD OF REVIEW

{¶71} Under the doctrine of cumulative error, "a conviction will be
reversed where the cumulative effect of errors in a trial deprives a defendant
of the constitutional right to a fair trial even though each of [the] numerous

instances of trial court error does not individually constitute cause for reversal." *State v. Smith,* 2016-Ohio-5062, 70 N.E.3d 150, (4th Dist.), ¶ 106, quoting *State v. Garner,* 74 Ohio St.3d 49, 64, 656 N.E.2d 623 (1995). "Before we consider whether 'cumulative errors' are present, we must first find that the trial court committed multiple errors." *State v. Harrington,* 4th Dist. No. 05CA3038, 2006-Ohio-4388, ¶ 57, citing *Goff,* 82 Ohio St.3d at 140, 694 N.E.2d 916.

## B.  LEGAL ANALYSIS

{¶72} By our resolution of the above assignments of error having found the trial court did not commit error, the cumulative error doctrine is inapplicable herein.  As such, we summarily overrule Appellant's final assignment of error and affirm the judgment of the trial court.

**JUDGMENT AFFIRMED.**

## JUDGMENT ENTRY

It is ordered that the JUDGMENT BE AFFIRMED and costs be assessed to Appellant.

The Court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this Court directing the Pike County Common Pleas Court to carry this judgment into execution.

IF A STAY OF EXECUTION OF SENTENCE AND RELEASE UPON BAIL HAS BEEN PREVIOUSLY GRANTED BY THE TRIAL COURT OR THIS COURT, it is temporarily continued for a period not to exceed sixty days upon the bail previously posted. The purpose of a continued stay is to allow Appellant to file with the Supreme Court of Ohio an application for a stay during the pendency of proceedings in that court. If a stay is continued by this entry, it will terminate at the earlier of the expiration of the sixty day period, or the failure of the Appellant to file a notice of appeal with the Supreme Court of Ohio in the forty-five day appeal period pursuant to Rule II, Sec. 2 of the Rules of Practice of the Supreme Court of Ohio. Additionally, if the Supreme Court of Ohio dismisses the appeal prior to expiration of sixty days, the stay will terminate as of the date of such dismissal.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

Abele, J.:   Concurs in Judgment and Opinion.

Hoover, J.:   Concurs in Judgment and Opinion as to Assignments of Error I, III, & IV; Concurs in Judgment Only as to Assignment of Error II.

For the Court,

BY: _____
Matthew W. McFarland, Judge

**NOTICE TO COUNSEL: Pursuant to Local Rule No. 14, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.**